618 So.2d 859 (1993)
Josie HAMPTON, Curatrix of Cathy Hampton, and Tutrix of Tananka Hampton
v.
Holly F. GREENFIELD, M.D., Karen Miller, M.D., M. Reyes, Charles Smith, M.D., State of Louisiana Department of Health and Human Resources
Consolidated With the United States Internal Revenue Service, et al.
No. 92-C-2770.
Supreme Court of Louisiana.
May 24, 1993.
*860 Richard P. Ieyoub, Atty. Gen., Charles T. Williams, Metairie, John E. Baker, Mandeville, Blue, Williams & Buckley, Metairie, George F. Kelly, III, Kelly & Davenport, New Orleans, for applicant.
Joseph W. Thomas, Henry P. Julien, Jr., Julien & Julien, New Orleans, for respondent.
MARCUS, Justice.[*]
In 1986, while being treated at Charity Hospital of New Orleans[1], Cathy Hampton suffered a cardiac arrest and lapsed into a coma from which she emerged mentally and physically impaired. Josie Hampton, as curatrix of Cathy Hampton and tutrix of *861 Tananka Hampton, filed a medical malpractice action against the State of Louisiana; Charity Hospital of New Orleans; two medical residents employed by Charity Hospital, Drs. Smith and Greenfield; and a student registered nurse anesthetist, Marcus Reyes. A jury found the individual defendants guilty of negligence and set damages at $3,200,000. The trial judge found no liability on the part of the State and reduced the damages from $3,200,000 to $500,000 applying the limitation of liability contained in La.R.S. 40:1299.39, the Public Medical Malpractice Act. The court of appeal affirmed the liability of the individual defendants; however, it reversed the finding of no liability on the part of the State and Charity Hospital. The court also found that the 1988 amendment to La.R.S. 40:1299.39 which added the state and state hospitals could not be applied retroactively to limit Hampton's recovery against the State and Charity Hospital. Finally, finding the damages excessive, the court reduced the award to $1,500,000. Hampton v. Greenfield, 576 So.2d 630 (La.App. 4th Cir.1991), writ denied, 581 So.2d 686 (La. 1991).
Thereafter, the State, through the Division of Administration, invoked a concursus proceeding depositing $2,027,382.08[2] in the registry of the court and impleading the Internal Revenue Service; Josie Hampton; her attorneys, Joseph W. Thomas and Henry P. Julien; Claudette Thomas, former spouse of Joseph W. Thomas; John T. Pender, bankruptcy trustee of Joseph W. Thomas; the State of Louisiana; and the Office of Risk Management. The State alleged that the defendants had conflicting claims to the deposited funds. The Internal Revenue Service, John T. Pender, and Claudette Thomas were dismissed with prejudice. A stipulation between the remaining parties resulted in the release of $878,363.72 to Hampton and her attorneys. The State and the Office of Risk Management claimed the remaining funds arguing that they owed no enforceable duty to pay the Hampton judgment absent legislative appropriation. Hampton and her attorneys claimed the remaining funds pursuant to the Hampton judgment. Hampton, Julien, and Thomas filed exceptions of no cause of action and no right of action and a motion to dismiss.
The trial judge found that the State was using the concursus proceeding to relitigate retroactive application of the $500,000 cap on damages under La.R.S. 40:1299.39 to the claims against the State and Charity Hospital. The trial judge also found that it was confronted with a res nova issue; namely, whether the State and the Office of Risk Management could have the funds on deposit returned to them. The trial judge determined that they could not reasoning that under La.Code Civ.P. art. 4658 the State, as a plaintiff filing a concursus proceeding, had admitted that the deposited funds were owed to one or more of the defendants. Accordingly, the trial judge dismissed the concursus proceeding with prejudice and ordered disbursement of the remaining funds to Hampton, Julien, and Thomas. The State and the Office of Risk Management appealed. Hampton, Julien, and Thomas answered the appeal requesting an award of sanctions against the State. While the appeal was pending, the legislature passed La.Acts 1992, No. 409 appropriating funds from the Self-Insurance Fund for payment of the balance of the Hampton judgment plus interest. Consequently, motions to dismiss the appeal were filed by the parties; however, Hampton and her attorneys continued to urge their request for sanctions. The court of appeal found that the State was improperly using the concursus proceeding to relitigate the applicability of the $500,000 cap under the Public Medical Malpractice Act by conjuring a distinction between entitlement to a judgment and enforcement of a judgment and, according to the court, no such distinction exists. The court determined that the trial judge's reasons for judgment were adequate to support sanctions on appeal, since the State's arguments *862 were identical to those already adjudicated by the court of appeal and the State was simply ignoring the court's prior holding. Accordingly, the court assessed sanctions[3] against the State under La.Code Civ.P. art. 863 totalling two times the amount of judicial interest that would have accrued but for the filing of the concursus proceeding.[4] On the State's application, we granted certiorari to review the correctness of that decision.[5]
The issues for our determination are whether a court of appeal may award sanctions under La.Code Civ.P. art. 863 and, if not, under what authority may the court of appeal award damages for frivolous appeal and whether such damages are warranted in this case.[6]
Under La.Code Civ.P. art. 863A, every pleading must be signed by the attorney of record or by the party himself, if the party is unrepresented. A signature constitutes a certification that the attorney or party has read the pleading and, after reasonable inquiry, the attorney or party believes that the pleading is well grounded in fact, legally tenable, and not interposed for any improper purpose. Id. art. 863B. A court may find a violation of the certification requirements of this article on its own motion or motion of any party. If the court determines that a violation has occurred, the court "shall" impose appropriate sanctions. Id. art. 863D. However, sanctions under article 863D can only be imposed "after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction." Id. art. 863E. Only a trial court is capable of holding the required art. 863 hearing where evidence may be presented on the sanctions issue. Therefore, on its face, the ability to impose sanctions under art. 863 is limited to the trial court. Moreover, we believe that the authority to impose art. 863 sanctions is limited to the trial court. The court of appeal's authority to regulate conduct before it is governed by La.Code Civ.P. art. 2164, which provides in pertinent part that "[t]he [appellate] court may award damages for frivolous appeal." By limiting the court of appeal's authority to awarding damages solely for frivolous appeals, art. 2164 places a logical limit on the application of art. 863 to matters before the trial court. Therefore, it was improper for the court of appeal to look beyond the appeal filed in that court. Additionally, it was improper for the court of appeal to award sanctions under La.Code Civ.P. art. 863.
Next, we must determine whether an award of damages against the State is warranted under art. 2164 which, as stated above, permits an appellate court to award damages for frivolous appeal. Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be allowed. City of Shreveport v. U.S.F. & G. Co., 131 La.933, 60 So. 621, 622 (1913).
Damages for frivolous appeal are only allowed when "it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious." Parker v. Interstate Life & Accident Ins. Co., 248 La.449, 179 So.2d 634, 636-37 (1965).
First, we find that the State did not appeal the trial court's ruling merely to delay payment of the Hampton judgment. We find support for our conclusion in the State's dismissal of its appeal after Hampton's attorneys obtained legislative appropriation for the judgment. Moreover, nothing in the record suggests that the appeal was filed solely for delay. Accordingly, the State's appeal does not fall within the first category of frivolous appeals under Parker.
*863 Next, applying Parker, we find that the State sincerely advocated its legal arguments on appeal. In its brief to the court of appeal, the State said that it was acting in "good faith" in asserting new legal arguments under the Louisiana Constitution and Louisiana Revised Statutes. "[W]hen counsel proclaims his sincerity, a court finds itself without just cause to disbelieve unless, and only unless, the proposition advocated is so ridiculous or so opposed to rational thinking that it is evident beyond any doubt that it is being deliberately professed for ulterior purposes." Parker, 179 So.2d at 637.
On appeal, the State argued that the judgment was "unenforceable" because the legislature had not appropriated money to pay the judgment as required by the Louisiana Constitution. Moreover, the Office of Risk Management lacked statutory authority to pay the judgment. Although the State had previously paid judgments without prior legislative appropriation, the State argued that it had no legally enforceable duty to do so. The State noted that Hampton and her attorneys were free to seek special appropriation from the legislature for payment of the Hampton judgment.
Article XII, § 10(C) of the 1974 Louisiana Constitution provides that:
The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefore by the legislature or by the political subdivision against which judgment is rendered.
The relevant statutes establishing procedures for suits against the state have, consistent with the constitution, required legislative appropriation for the payment of judgments against the state. For instance, La.R.S. 13:5109B(2) provides that "[a]ny judgment rendered in any suit filed against the state ... shall be exigible, payable and paid only out of funds appropriated for that purpose by the legislature...." Similarly, La.R.S. 40:1299.39, the Public Medical Malpractice Act, states that the right to recover for loss due to malpractice is "subject to the fiscal legislative discretion of appropriation."
In 1980, the legislature devised a mechanism for the payment of certain claims against the state and state agencies with appropriated funds. Specifically, the legislature created the Self-Insurance Fund which consisted of premiums assessed against state agencies for the payment of losses which they incurred. La.Acts 1980, No. 520 (codified as La.R.S. 39:1527 to 1546). Additionally, the Office of Risk Management was created, Id. (codified as La.R.S. 39:1528), which was charged with various duties and responsibilities including the "negotiation, compromise, and settlement of all claims against the state." Id. (codified as La.R.S. 39:1535(B)(6)). Judgments against the state "may be settled "under the same conditions as negotiations, compromises, and settlements. Id. (codified as La.R.S. 39:1538(3)). However, "no direct action [may lie] against the Self-Insurance Fund and claimants, with or without a final judgment recognizing their claims, [have] no enforceable right to have such claims satisfied or paid from the Self-Insurance Fund." Id. (codified as La.R.S. 39:1538(4) (emphasis added)). At the time, claims against state health care providers for medical malpractice were expressly excluded. Id. (codified as La.R.S. 39:1539). Then, in 1987, La.R.S. 39:1539 was amended to provide that medical malpractice judgments payable by the state pursuant to the Public Medical Malpractice Act "may be funded and paid from the Self-Insurance Fund." La.Acts 1987, No. 785 (emphasis added). This provision was amended again in 1988 to provide that medical malpractice judgments payable by the state under the State Medical Malpractice Act "shall be funded and paid from the Self-Insurance Fund." La.Acts 1988, No. 60 (emphasis added).
Missing from this statutory scheme is clear authority requiring the Office of Risk Management to pay final judgments *864 against the state. The language of La.R.S. 39:1535(B)(6) suggests that the Office of Risk Management's authority may be limited to negotiating, compromising, and settling claims. La.R.S. 39:1538(3) which permits "settlement" of judgments does not necessarily permit "payment" of judgments against the state. If La.R.S. 39:1539 could be construed as giving the Office of Risk Management authority to pay medical malpractice judgments from the Self-Insurance Fund without special legislative appropriation, it is uncertain whether the Office of Risk Management's authority would extend to payment of the Hampton judgment because the Hampton claim arose in 1986, prior to application of the Public Medical Malpractice Act to the State or Charity Hospital. Hampton, 576 So.2d at 635. Moreover, under La.R.S. 39:1539, if the Office of Risk Management has authority to pay medical malpractice judgments, it is debatable whether that authority would be limited by the Public Medical Malpractice Act's $500,000 liability cap. Finally, La.R.S. 39:1538(4) could be interpreted as supporting the State's position that while Hampton and her attorneys were "entitled" to payment of the Hampton judgment, the judgment was not enforceable and required special legislative appropriation.
Based on the foregoing discussion, we find that the State raised legitimate issues on appeal regarding whether it had a legally enforceable duty to pay the Hampton judgment absent special legislative appropriation. Therefore, we believe that the State sincerely advocated its legal position on appeal and that the appeal was not taken for ulterior purposes. Accordingly, we conclude that the State's appeal does not fall within the second category of frivolous appeals under Parker. Therefore, damages for frivolous appeal under La. Code Civ.P. art. 2164 are not warranted in the present case.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed insofar as it awarded sanctions against the State of Louisiana. The judgment affirming the trial court's judgment ordering disbursement of the funds is affirmed.
ORTIQUE, J., concurs in part and dissents in part and assigns reasons.
ORTIQUE, Justice, concurring in part and dissenting in part.
The majority affirms the judgments of the lower courts ordering the immediate disbursement of the funds. This is now a moot issue.
The Court correctly decides that the imposition of sanctions by a court of appeal based upon LSA-C.C.P. art. 863 is improper, since that article prescribes a procedure for our trial courts. But, by refusing to uphold the sanctions awarded as damages for a frivolous appeal under LSA-C.C.P. art. 2164, the Court otherwise reaches a wrong result. The majority's decision impliedly condones judicial abuses by the State and its counsel which go beyond the scope of an inquiry into a frivolous appeal, amounting to bad faith and ill practices. I would remand this case to allow the court of appeal to reform its judgment in conformity with LSA-C.C.P. art. 2164, or remand the case to the trial court to dispose of the plaintiffs' request for article 863 sanctions. In my view, the majority should not have decided the question of a frivolous appeal until the appellate court addressed the issue.
At the outset it is important to identify the actions which are challenged by the plaintiffs' sanction request. After trial by jury, judgment was entered for plaintiffs and against defendants in the amount of $1,500,000.00 plus interest and costs. Subsequent to this judgment becoming final, the State of Louisiana, through the Division of Administration ("State"), instituted a concursus proceeding in which it named as defendants in concursus Cathy Hampton, her attorneys, Henry P. Julien and Joseph Thomas, the U.S. Internal Revenue Service, Claudette Thomas, John Pender and the State of Louisiana, through the *865 Office of Risk Management.[1] The State deposited funds in the amount of $2,027,382.08 in the registry of the court representing the amount of the judgment, interest and costs.
This case is troubling in several respects, not the least of which is the majority's concern with the State's uncertainty as to whether it had a legally enforceable duty to pay the Hampton judgment absent special legislative appropriation. The appellate court on consideration of the State's appeal on the merits found that the State had conjured a distinction between "entitlement to a judgment" and "enforcement of a judgment" in order to relitigate the liability issue. I heartily agree with the appellate court's conclusion that the concursus proceeding was not the proper mechanism to challenge the enforceability of a judgment.
Simply stated, it was unreasonable, in the context of client litigation, that an attorney in this state should anticipate that his former wife, his trustee in bankruptcy and his other creditors would be hauled into court and made claimants to the proceeds of a judgment that he has been successful in obtaining FOR A CLIENT.
In my view, the State and its counsel have openly abused the judicial system by invoking a concursus proceeding in which the State named the Internal Revenue Service, the ex-wife of one of the plaintiff's attorneys, plaintiff, her attorney and itself as defendants. It is an abuse of the judicial process for the party placing funds into concursus to implead itself as a defendant.[2] The trial court had already determined that the State was attempting to relitigate the issue of liability. The State's appeal of the trial court's dismissal of the concursus petition constitutes a frivolous appeal, for which damages should be awarded.
Under LSA-C.C.P. art. 2164, the courts of appeal have the inherent power to fashion and impose sanctions. This power is incident to the court's duty to protect the judicial process. This authority is specifically conferred by article 2164 which provides:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
If the appellate court determines that the appeal is frivolous, it has the authority and responsibility within its supervisory jurisdiction to initiate and to decide the question of sanctions. No such determination has been specifically made by the appellate court.[3]
The majority applies the "extremely subjective test"[4] set forth over 27 years ago in *866 Parker v. Interstate Life & Accident Insurance Co., 248 La.449, 179 So.2d 634 (1965), concluding that the appeal was not taken "merely to delay payment of the Hampton judgment" and that "the State sincerely advocated its legal arguments on appeal". I disagree with such a subjective test as announced in Parker. Any attorney schooled in the art of advocacy may interpose sincerity in the position he advocates on appeal, under threat of the imposition of damages against him or his client. I further disagree with the majority's conclusion. Even employing the Parker test to the facts of this case, the machinations of counsel under the pretext of advocacy, lead to a different conclusion.
Prior to the majority opinion, I doubt that there was an attorney in this state who expected that upon obtaining a favorable result for his client that he might be impleaded with his personal creditors, his client, the Internal Revenue Service and the original defendant. Such actions as those exhibited by the State and its counsel in this matter are not in the furtherance of imaginative lawyering. Rather such actions appear to be maliciously contemplated to embarrass counsel and to harass a prevailing party. These actions can only be viewed as designed to delay payment of the judgment. As such, these actions constitute vexatious litigation replete with rank and unconscionable ill-practices, unknown to our noble profession. At the point in this litigation, when the defendant filed this concursus proceeding, the award was the property of the prevailing client. The attorney may have had a claim to such portion as he had personally earned. But this record indicates on its face that plaintiff had engaged additional counsel. Were the creditors impleaded by defendant, being invited to attack the attorney's fees, or only such portion earned by Mr. Thomas? The sincerity of counsel for the defendant becomes more disingenuous when counsel impleaded the defendant, his client, as a party to the concursus proceeding. Such machinations should not be countenanced or encouraged by our courts.
Accordingly, I would remand this case to the court of appeal, so that court could decide the question of whether the State's appeal was frivolous or not, under the proper codal articles and jurisprudence. To this end, that court might wish to evaluate and appraise the actions of counsel and assess damages against the State and its counsel, in an amount sufficient to redress the abuses they contrived. Alternatively, since the flagrant abuse of the judicial process is already contained in the record, the court of appeal might remand this case to the trial court to give a valuation to each aspect of the obvious abuses.
Nothing in this opinion opposes or even dissuades imaginative and/or creative lawyering. The Civil Rights Movement would not have succeeded except for creative and imaginative lawyering, at every level of the judicial process. Imaginative and creative lawyering has been and must be encouraged. The genius of a lawyer in a free society, must not be curtailed or stilted. To alert the U.S. Internal Revenue Service or an ex-spouse of one of the attorneys who has won a judicially deserved award for his client, is neither imaginative nor creative!
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Lemmon, J. was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] Presently designated as the Medical Center of Louisiana at New Orleans. La.R.S. 40:2002.5.
[2] The $2,027,382.08 deposited in the registry of the court represented the Hampton judgment plus interest.
[3] In the State's writ application to this court, it is stated that the award of sanctions amounted to $161,080.84.
[4] 602 So.2d 327 (La.App. 4th Cir.1992).
[5] 607 So.2d 547 (La.1992).
[6] The State's only assignment of error before this court is the award of sanctions.
[1] By some means the State learned that a levy by the U.S. Internal Revenue Service was outstanding against attorney Joseph Thomas. This is the reason counsel for the State gave for having impled the U.S. Internal Revenue Service in its concursus proceeding. Claudette Thomas, former wife of Joseph Thomas, and John Pender, bankruptcy trustee for Joseph Thomas, were likewise impleaded because they allegedly claimed an interest in the funds.
[2] LSA-C.C.P. art. 4652 provides in part: "No claimant may be impleaded in a concursus proceeding whose claim has been prosecuted to judgment." LSA-C.C.P. art. 4658 provides that a plaintiff filing a concursus proceeding admits that the funds on deposit are due to one or more of the defendants.
[3] The court of appeal found that the trial court's reasons for judgment were adequate to support sanctions against the State on appeal. "The State's arguments in this proceeding are identical to those already adjudicated by this court. The State is simply ignoring the prior holding of this court." Hampton v. Greenfield, 602 So.2d 327, 329 (La.App. 4th Cir.1992).
[4] See Stephenson, Damages for Frivolous Appeal. 45 La.L.Rev. 137, 146 for the following criticism of the extremely subjective test announced by Parker:

The last and perhaps greatest difficulty in the application of article 2164 is the extremely subjective test set forth by the Louisiana Supreme Court in Parker v. Interstate Life & Accident Insurance Co. as to when damages may be awarded. Under that test, if the appellant's counsel professes sincerity in the position he advocates, a court may award damages only if "the proposition advocated is so ridiculous or so opposed to rational thinking that it is evident beyond any doubt that it is being deliberately professed for ulterior purposes." The test is so difficult for an appellee to meet that article 2164 is rendered almost meaningless except to those seeking damages for delay caused by an abandoned appeal. This is evidenced by the paucity of awards made to appellee under article 2164. (citations and footnotes omitted).