I iWICKER, Judge.
This appeal arises from a suit on a promissory note filed on behalf of plaintiff/appellant, United Companies Lending Corporation (United), against defendants/appellees, Jessi-na Billiot Forster, and William E. Forster, Jr. (Forster), seeking to reinstate a promissory note it allegedly cancelled by mistake. Also named as defendants were Dennis Adam Falterman, Jr. (Falterman), the party from whom appellees assumed the note, and John Gegenheimer, Clerk of Court and ex-officio recorder of mortgages for the Parish of Jefferson. Service was withheld on Fal-terman. Prior to trial counsel stipulated the Faltermans and Gegenheimer were nominal parties. United also seeks to have the mortgage on immovable property which secured this note, be reinstated. The trial judge found in favor of the Forsters and ordered (1) the mortgage, amendment to the mortgage, and assignments be cancelled; (2) the affidavit against the Forsters by United be cancelled, and (3) the notice of lis pendens be cancelled. United now appeals. We affirm.
This matter was previously before the court in United Companies Lending Corporation v. Falterman, 94-113 (La.App. 5/31/94), 637 So.2d 1328 (unpublished opinion). In our prior opinion we vacated the granting of a motion for summary judgment in favor of appellees and remanded the matter for further proceedings. We concluded at 3 “there are factual matters in dispute as to whether the debt has been satisfied and whether any outstanding balance remains to be paid on the note.”
We explained at 2-3:
The threshold issue here is whether there are any material facts in dispute which would preclude judgment in defendants’ favor as a matter of law. Plaintiff relies on Civil Code, art. 1889, as grounds for relief in this matter. That Code, art. 1889 provides that:
An obligee’s voluntary surrender to the obligor of the instrument evidencing the obligation gives rise to a presumption that the obligee intended to remit the debt.
This article does nothing more than establish that when an instrument has been returned to the debtor a legal presumption arises that the obligation has been extinguished. As to the effect of |2a legal presumption, Civil Code, art. 1850, states that the party in whose favor it runs need offer no further proof in support of the fact presumed. Article 1851, further provides, however, that the presumption may be controverted by the person against whom it runs.
In the present ease, plaintiff has asserted that the marking of the note as paid was an error, that at least a portion of the debt evidenced by that note remains un *1092 paid, and that it had no intention to remit this alleged outstanding indebtedness. In support of this assertion it submitted the affidavit of Frank W. Foote, a vice-president in plaintiffs company, attesting to these facts. This affidavit, while not dis-positive of the ultimate truth of the matters asserted, nonetheless clearly establishes that there are factual matters in dispute as to whether the debt has been satisfied or whether any outstanding balance remains to be paid on the note. Although the effect of article 1889, is to place the burden of proving these matters upon the plaintiff, it is entitled to attempt to meet this burden at a trial on the merits. We rule, therefore, that the trial judge fell into error in disposing of the case by way of summary judgment, and we hereby vacate that judgment and remand the case to the district court for further proceedings.
United was the holder of a negotiable promissory note dated August 25,1972 in the amount of $86,400.00 made payable to French Market Homestead. The maker of the note was Falterman. A copy of the note introduced into evidence shows that the interest rate was 8.75% per year with monthly notes of $286.37 until paid beginning September 25, 1977. The note was reduced to $36,-025.56 as of August 17, 1978 and was assumed by the Forsters when they purchased the immovable property, which was secured by the note, from Falterman on August 17, 1978. The act of sale recites that the For-sters paid $18,000.00 in cash and assumed $36,025.56. Although United alleged in its petition that there was an amendment to the loan whereby the interest rate increased to 9.25%, effective August 1, 1978, no such amendment was introduced into evidence. A copy of the mortgage certificate introduced into evidence does recite an act of amendment dated August 17, 1978 was recorded but does not give the terms of that amendment.
On February 25,1991 United became holder of the promissory note and mortgage by sale and assignment from Resolution Trust Corporation as Receiver of French Market Homestead.
United sent a letter on July 6, 1992 to the Forsters stating the note was paid in full and thanked them for their business. United enclosed the original promissory note stamped “paid” and instructed the Forsters to take the note to the clerk’s office and have the mortgage cancelled. After consulting an attorney the Forsters had the mortgage can-celled on the same date. United ^subsequently claimed it had erred in cancel-ling the note because the loan was not paid out. It sent a second letter dated July 31, 1992 stating it had erred and asked for the return of the original note.
After trial on the merits the trial judge rendered judgment in favor of appellees and ordered the mortgage cancelled.
On appeal United specifies the following errors:
1. Having judicially acknowledged at the trial’s conclusion that “there obviously was an error on the part of (plaintiff)” in surrendering the promissory note, the trial judge committed manifest error in failing to rule that the presumption of a remission had been rebutted as provided for by LSA-C.C. Article 1889, and
2. The trial court’s recognition of remission of the debt was without basis in law or in fact where there was no consideration for the cancellation of the note and actual consent had never been obtained from the obligee creditor.
The testimony at trial revealed the following. Frank Foote, Vice-President of United, testified he has worked for United 14 years. His duty is to maintain loan file documents. He stated the last payment received was March 1, 1992. He testified the principal amount owed was right under $36,000.00. He did not have an account history showing this amount was owed. He only had “personal notes” and the history after United purchased the note from Resolution Trust Corporation.
He identified a document which was introduced into evidence as P-2. This document, however, does not give a payment history. It also does not indicate the manner in which any allegedly owed amount was calculated or the entity responsible for computing the fig *1093 ures. It lists the Forster loan -with an original balance of $36,400.00 and $36,132.05 as the current balance as of January 31, 1991.
The Forsters’ counsel objected to the use of this document to show actual figures of amounts allegedly owed. He asked the court to accept this document only for the purpose of showing what United “believed” was owed. The trial judge agreed.
Foote also identified a document labeled P-3 which was introduced into evidence. He stated this document was United’s loan history from the time it acquired the note to the last payment of 3/01/92. He indicated the figure of $35,999.23 on the document was the amount owed. Numerous figures are noted on this document, none of which were explained by Foote. UFoote did not testify as to his personal knowledge that the note was not paid. Furthermore, he gave no testimony that he had personal knowledge of the payment history prior to United’s acquisition from Resolution Trust Corporation.
Foote also identified P-4 which was introduced into evidence. This document is a letter addressed to Foote from someone named Ellen Muhovieh listing the Forster loan as having a balance of $35,999.23 as of September 21, 1992. The letter, however, gives no payment history or further explanation as to how this figure was derived.
Although documents P-2, P-3, and P-4 were admitted into evidence the Forsters’ counsel objected to their admission for the purpose of showing the actual amount owed. We note that prior to trial counsel stipulated that the entire record would be introduced into evidence. The record contains several sheets of what purports to be a “loan history.” These were not referred to at trial by Foote nor was anyone called to testify as to an explanation of these figures. This court finds this material unintelligible to decipher.
Forster testified he has made payments on the account since March 1, 1992 but had no receipts of these payments with him at trial. He stated he paid off his first mortgage with French Market Homestead. He was confused when he began paying Resolution Trust Corporation and United. He stated he paid notes to French Market for approximately 16 years. When French Market went insolvent he paid Resolution Trust Corporation. At some point he was notified he had to start paying United. He testified he paid on the notes to United.
After he received the letter of cancellation from United around July 6, 1992 he sought his attorney’s advice on or about July 14, 1992 because he had never owned a home before and did not know what to do with the cancelled note. His attorney spoke to Foote on the date Forster consulted the attorney. Afterwards his attorney advised him to bring the cancelled note to the mortgage office to have the mortgage cancelled. He then threw his payment book and receipts for his cash payments into the garbage. He paid in cash and had no cancelled checks. The only can-celled check he paid was the one he paid to assume the loan at the act of sale.
At first he thought he owed money on the note but then he realized he did not owe any money because he had paid a lump sum at some point. At one point he paid approximately twenty payments and had still continued to pay notes thereafter. He denied he owed anything further on the note.
| sAround August 1st or 2nd he received a letter from United informing him there had been a mistake.
Foote testified he first became aware that the note was cancelled in error when the Forsters’ attorney called him on or about July 14, 1992. He stated the attorney wanted to know if the loan was paid out. Foote pulled the loan up on the computer system and the loan appeared to be paid out. He thought it was an unusual request and told the attorney he would research it. Two weeks later he sent a letter to the Forsters stating there was an error. He testified this loan had been sold to another servicing company and the loan had to show a zero balance in their records. He explained this was a clerical error.
In his rendered judgment the trial judge concluded United did not meet its burden of rebutting the presumption in article 1899. We agree. United did not make out a prima facie case that an outstanding debt was mistakenly cancelled. The letter sent by *1094 Foote clearly states United’s intent to cancel the note as being paid. At trial United failed to establish there was an outstanding debt owed and the act was thus unintentional.
United relies on a statement made by the trial judge at the conclusion of the case. The trial judge opined “I believe there obviously was an error on the part of United Companies.” Based on this statement United argues the trial judge then incorrectly found in favor of defendant/appellees since that statement indicates the presumption was rebutted. However, the judgment rendered by the trial judge states that United “failed in its burden of proof to rebut the presumption provided by La.C.C.P. Art. 1889.”
In Muller v. Muller, 94-281 (La.App. 3rd Cir. 10/5/94), 643 So.2d 478 the court explained at 480:
It has been well established that a trial judge may discretionarily sign a judgment based on reasons which differ substantially from previously stated oral reasons. Bordelon v. Dauzat, 389 So.2d 820 (La.App. 3d Cir.1980).
A trial judge’s oral reasons for judgment do not constitute a final judgment. Therefore, prior to a final judgment a trial judge may, at his discretion, change the substance or the result of any interlocutory rulings, id. Moreover, since a trial judge may sign a final judgment that differs substantially from previously written reasons for judgment, a fortiori, a trial judge may sign a final judgment that differs from previously rendered oral reasons for judgment ...
| eThe rendered judgment and not the oral statement made by the trial judge is controlling. We find no merit to United’s contention the trial judge incorrectly found United had carried its burden and yet still ruled against United. On the contrary, the position taken by the trial judge in the final judgment is that United did not carry its burden of rebutting the presumption.
Civil Code article 1889 is consistent with the Uniform Commercial Code (U.C.C.) provision 3-605, adopted by Louisiana in 1975 as La.R.S. 10:3-605 and applicable to the instant case.[1] La.R.S. 10:3-605 provided:
(1) The holder of an instrument may even without consideration discharge any party
(a) in any manner apparent on the face of the instrument or the indorsement, as by intentionally cancelling the instrument or the party’s signature by destruction or mutilation, or by striking out the party’s signature; or
(b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.
(2) Neither cancellation nor renunciation without surrender of the instrument affects the title thereto.
In Gover v. Home and City Savings Bank, 574 So.2d 306 (Fla.App.1991) Florida considered the interpretation of its section 605, identical to the U.C.C. as our section 605 was. In that case the debtor argued that that provision allowed for a gratuitous or unintentional discharge when the [7Ínstrument was surrendered or a signed writing delivered. Florida joined the unanimity of other jurisdictions in holding “that cancellation or renunciation of an instrument is ineffective if it is unintentional or procured by mistake.” Id. at 306. Article 1889 of our *1095 civil code is consistent with these views. Our adoption of U.C.C. section 605 does not displace this article.
In Hanna v. G.Y. Parrish, 317 P.2d 745 (Okla.1957) the court considered a similar situation to the one at bar. In Hanna the debtor testified the note had been paid. The creditors in that case had surrendered the note to the debtor and marked it “paid” and “released.” A letter from the office manager was also sent thanking the debtor for payment. Along with the letter was the chattel mortgage stamped, “paid.” The witnesses for the creditors did not have personal knowledge of whether the debt had been paid. Instead, they relied on their books which showed the note had not been paid. Their basis for concluding it had not been paid was the absence of any record of payment. The jury determined the creditors had not borne their burden of proving the note was cancelled unintentionally or by mistake. That factual conclusion was upheld on appeal.
Similarly, we find no manifest error in the trial judge’s factual conclusion as stated in the judgment that United failed to rebut the presumption in article 1889.
We also find no merit to United’s argument that the Forsters have been unjustly enriched since United failed in proving a debt was owed.
In their brief appellees have urged a “Motion for Frivolous Appeal” praying for attorney’s fees. However, they have not answered the appeal as required by La.Code Civ.P. art. 2133 nor have they appealed. Thus, we cannot entertain this motion. Gardner v. Kostmayer & Associates, Inc., 94-65 (La.App. 5th Cir. 5/31/94), 638 So.2d 434, writ denied, 94-1763 (La. 10-07-94), 644 So.2d 646; Jacobs v. Brown Medical Center, 93-675 (La.App. 5th Cir. 1/12/94), 631 So.2d 461, writ denied, 94-0373 (La. 3/25/94), 635 So.2d 239.
We note “[ajppeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be allowed.” Hampton v. Greenfield, 618 So.2d 859 (La.1993) at 862.
Furthermore:
Damages for frivolous appeal are only allowed when “it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is |gof the opinion that such view is not meritorious.” Parker v. Interstate Life & Accident Ins. Co., 248 La. 449, 179 So.2d 634, 636-37 (1965).

Id.

There is nothing in the record to suggest the appeal was taken solely for delay or that United’s counsel was insincere in his presentation of legal arguments.
Accordingly, for the reasons stated, the judgment is affirmed at appellant’s cost.

AFFIRMED.

. The substance of La.R.S. 10:3-605 is now contained in La.R.S. 10:3-604 which was amended by Acts 1992, No. 1133, § 3, effective January 1, 1994. At the time of the discharge of the note in the instant case in 1992 former 3-605 was in effect. In First National Bank of Fairbanks v. Taylor, 488 P.2d 1026 (Alaska, 1971) a section of the U.C.C. was relied upon by one of the parties. The court held that this section which became effective after the date of satisfaction and discharge in that case was inapplicable. The newly enacted La.R.S. 10:3-604 provides:
(a) A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge, or (ii) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing, (b) Cancellation or striking out of an indorsement pursuant to Subsection (a) does not affect the status and rights of a party derived from the indorsement.