759 So.2d 115 (2000)
Larry VERRET
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Southern Sweeping Services, Inc. and Bradley LeBouef, d/b/a Southern Sweeping Services.
No. 99-1250.
Court of Appeal of Louisiana, Third Circuit.
February 2, 2000.
Writs Denied April 20, 2000.
*117 J. Clemille Simon, J. Quentin Simon, J. Daniel Rayburn, Jr., Matthew J. Hill, Jr., Lafayette, LA, Counsel for Plaintiffs/Appellants in 99-1250.
Preston D. Cloyd, Taulbee & Escott, LLC, Lafayette, LA, Counsel for Defendants/Appellees in 99-1250.
Craig A. Davis, Lafayette, LA, Counsel for Plaintiff/Appellant in 99-1251.
Preston D. Cloyd, Taulbee & Escott, LLC, Lafayette, LA, Counsel for Defendants/Appellees in 99-1251.
Court composed of Judge HENRY L. YELVERTON, Judge JIMMIE C. PETERS, Judge MARC T. AMY.
AMY, Judge.
In this consolidated action, the trial court determined that the automobile accident at issue did not result from an intentional tort thereby precluding recovery by an employee-plaintiff, but that the remaining plaintiff, a guest passenger at the time of the accident, sustained medical injuries. Both plaintiffs appeal.

Factual and Procedural Background
The plaintiffs, Larry Verret and Barbara Este, filed individual suits following a May 8, 1994 single-vehicle accident occurring in Lafayette Parish. They allege that on that evening, Verret was driving a oneton pickup truck equipped with a sweeper apparatus owned by his employer, Bradley LeBouef d/b/a Southern Sweeping Services. The plaintiff's contend that at the time of the accident, Verret was on his way to clean/sweep the parking lots of commercial properties that were clients of his employer. Este, Verret's girlfriend, was accompanying him and was a guest passenger in the vehicle. Verret contends that while traveling, he applied his brakes and, due to the load of the truck and the allegedly bald condition of the tires, the truck veered into the ditch. Both plaintiffs contend that they were injured as a result of the accident.
Verret filed suit on May 8, 1995, against Bradley LeBouef, d/b/a Southern Sweeping Services, Southern Sweeping Services, Inc., and State Farm Mutual Automobile Insurance Company (referred to collectively as "the defendants"). In his petition, Verret argued that the truck involved in the accident was equipped with "dangerously bald tires[,]" that they had been in this condition for months, and that he and other employees had voiced their concern over the condition to LeBouef. He asserted that the complaints were ignored and the tires were not replaced. Thus, he contends that LeBouef was "substantially certain" that physical injury was to follow and, thus, the defendants were liable for damages under a theory of intentional tort. He sought damages for his physical injuries. The defendants answered Verret's petition denying the allegation of intentional tort and arguing that the sole cause of the accident was Verret's negligence.
Also on May 8, 1995, Este filed suit against the defendants asserting liability for their negligence in failing to replace the bald tires and maintained the vehicle in a safe operating manner.[1] Alternatively, *118 Este named Verret as a defendant contending that his negligent operation of the vehicle caused the injuries she allegedly sustained in the accident. The defendants answered denying the allegations regarding the maintenance of the truck and asserting that Verret's negligence was the sole and proximate cause of the accident. The defendants further alleged at this time that they were "not responsible for the acts of negligence of a third party, namely Larry Verret." No answer was filed on Verret's behalf in his capacity as a defendant in the Este suit.
The Este and Verret matters were consolidated in July 1995. In January 1996, Este filed a motion for summary judgment as to the liability of LeBouef, d/b/a Southern Sweeping Services, and State Farm. She alleged that the defendants judicially confessed, by way of Joint Stipulation of Fact, that Verret was in the course and scope of his employment at the time of the accident and that LeBouef, d/b/a Southern Sweeping, owned the vehicle. The Joint Stipulation of Fact referred to in this motion is contained in the record of the Verret proceeding and is dated November 30, 1995.[2] Although the summary judgment was initially denied by the trial court, a panel of this court reversed the determination and ordered the trial court to enter judgment against the defendants.[3]See Este v. State Farm Mut. Auto. Ins. Co., et al., an unpublished writ decision rendered on May 9, 1996, and bearing the docket number 96-128 of this court. A final judgment of liability in this regard was signed by the trial court and filed on August 6, 1996.
As no answer had been filed on Verret's behalf in the Este suit, Este filed a motion for preliminary default against Verret attaching affidavits regarding her medical expenses, the affidavit of an orthopedic surgeon indicating that the injuries complained of were causally related to the accident, photographs of the vehicle, and the affidavit of an accident reconstruction *119 expert who opined that the accident was caused by a combination of an overweighted truck and worn tires. The preliminary default was entered on December 30, 1996. The default judgment was confirmed against Verret on June 16, 1997. Este was awarded $80,672.92 in special and general damages.[4]
The day after the confirmation of the default judgment, the defendants filed a Motion to Vacate, Modify or Set Aside Judgment. In the motion, they alleged that they received no notice of the preliminary default or of the hearing date for the confirmation. They asserted that, due to this lack of notice, they were entitled to have the default judgment set aside. In their memo in support of the motion, the defendants alleged that the judgment should be set aside and annulled for a variety of reasons. First, the defendants pointed out that the judgment was obtained by the plaintiffs' attorney who had an alleged conflict of interest due to the naming as a defendant and entry of judgment against Verret in Este's suit although the same attorney represented both Verret and Este in their capacities as plaintiff. Also, as noted in their motion, the defendants asserted that they filed answers in both actions and although they requested notice for all orders, which they argue would include an order of preliminary default, they had not been notified of the default judgment. They argued that "[t]he practices of Plaintiffs' counsel, along with the failure of the Clerk's Office to provide the Notice as mandated by law and at the request of Defendants, serves to completely annul [sic] the Judgment rendered herein."
Following a hearing on the motion to vacate, the trial court granted the motion and set aside the default judgment on July 23, 1997. A transcript of the hearing held on the motion to vacate is contained in the record as an attachment to the defendants' memorandum in opposition to Este's subsequently filed motion for new trial. At a hearing on the motion to vacate, the trial court observed what it believed to be a conflict of interest in the plaintiffs' attorney's representation in the consolidated matter. It stated that it believed the representation of the two parties constituted ill practices and, accordingly, the judgment was vacated. Este filed a motion for new trial, alleging that notice of the default judgment was not required, any ethical violation of professional conduct rules is not grounds for annulment of the judgment, and any judgment annulled for ill practices must be asserted in a direct action. The motion for new trial was denied. Subsequently, an answer was filed on behalf of Verret denying the allegations of negligence asserted in Este's petition.
After the consolidated matter proceeded to trial, the court entered judgment in favor of Este, casting the defendants in judgment for $46,917.65 for both special and general damages. As for Verret, the trial court concluded that he failed to prove that the accident resulted from an intentional tort. After trial, Este dismissed all claims against Verret while reserving her rights against the remaining defendants. Both Este and Verret appeal the trial court's determination and, in a joint brief to this court, assert that the trial court erred as follows: 1) Granting the defendants' Motion to Vacate, Modify or Set Aside Judgment; 2) Awarding only $46,917.65 in damages when $80,672.92 was awarded in the default judgment; 3) Denying Verret's intentional tort claim. *120 The defendants have filed a motion to dismiss with this court alleging that Este acquiesced in the judgment thereby precluding her appeal. Este has filed a motion for sanctions alleging that the dismissal request is not well grounded in fact or law.

Discussion

Motion to Dismiss
In their motion to dismiss, the defendants assert that following the signing of judgment in this matter, the damages awarded were paid by draft and forwarded to Este's attorney. They contend that the draft was received by Este's attorney on May 12, 1999, and was accompanied by the "original Satisfaction of Judgment and Act of Cancellation of Judicial Mortgage." In the memorandum in support of the motion, the defendants argue that the draft was negotiated on May 26, 1999. Subsequently, Este and Verret were both awarded a devolutive appeal. The defendants contend that Este's appeal should be dismissed "noting that she negotiated the Judgment proceeds and extinguished the debt owed by Defendants to her prior to taking the Devolutive Appeal in this matter whereby she has no right to appeal."
The defendants direct this court to La. Civ.Code art. 1854 which provides: "Performance by the obligor extinguishes the obligation." Further, La.Code Civ.P. art. 2085 provides, in part:
An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession of or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment.
As explained in Vincent v. State Farm Mut. Auto. Ins. Co., 95-1538 (La. App. 3 Cir. 4/3/96); 671 So.2d 1127, a potential appellant's right to appeal is forfeited for acquiescence only when the intention to acquiesce and abandon the appeal are clearly demonstrated. This type of acquiescence is never presumed and must be demonstrated by evidence that "leaves no doubt of the required intent." Id. at p. 3; 1129. Furthermore, "[a] party favored by the judgment is entitled to accept full payment from the party cast or may even cause execution of the judgment without forfeiting his right of appeal because of acquiescence." Id. See also Johnson v. Dickens, 97-282 (La.App. 3 Cir. 10/29/97); 702 So.2d 1110.
In Tolliver v. Crawford and Co., 621 So.2d 879 (La.App. 4 Cir.1993), the fourth circuit explained that a trial court, or the Office of Workers' Compensation as in Tolliver, retains jurisdiction to consider a motion to dismiss an appeal at which an appellant's acquiescence is at issue. The court in Tolliver recognized that "[a]n appeal of a judgment does not allow appellate review of issues which first arise after rendition of an appealed-from judgment." Id. at p. 881. Further, an appellate court does not have jurisdiction to receive new evidence and, thus, cannot consider documents not placed in evidence before the trial court. Wilson v. Head, 97-992 (La. App. 3 Cir. 2/4/98); 707 So.2d 127.
The record does not indicate that the defendants attempted to file a motion to dismiss with the trial court or that evidence arguably revealing acquiescence was filed. Neither is any such evidence attached to the motion to dismiss or the memorandum filed in support of the motion. Rather, we are left with nothing to consider other than assertions and argument from counsel. Finding that the defendants did not sufficiently demonstrate, either in this court or in the court of original jurisdiction, that Este acquiesced in the judgment so as to preclude her right to appeal, we deny the defendants' motion to dismiss.[5]

*121 Motion for Sanctions

Este filed a motion for sanctions pursuant to La.Code Civ.P. art. 863. She argues that the motion to dismiss is clearly not well grounded in law or fact. Article 863 provides, in part:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
. . . .
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.
While Este contends sanctions for frivolous appeal should be imposed pursuant to Article 863, an appellate court is without authority to make such an award. See Hampton v. Greenfield, 618 So.2d 859 (La.1993). In Hampton, the Louisiana Supreme Court recognized that an appellate court is without the ability to hold the type of hearing required by Section D as a prerequisite to Article 863 penalties. Id. However, Article 2164 provides: "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal[.]" Because appeals are favored, damages should not be awarded unless an appeal is unquestionably frivolous, i.e., it is obvious that the appeal was taken for delay or the counsel does not sincerely advocate the view advanced to the court. Hampton, 618 So.2d 859. It is insufficient that the court ultimately concludes the argument at issue is not meritorious. Id.
Although we have concluded above that the defendants did not sufficiently establish that Este is not entitled to exercise her appellate rights, we do not conclude that the motion to dismiss was so baseless as to require damages for frivolous appeal. Accordingly, the motion for sanctions is denied.[6]

Motion to Vacate, Modify or Set Aside Judgment
In the first assignment of error, Este contends that the trial court erred in granting the defendants' motion to vacate, modify, or set aside the default judgment entered against Verret. She contends that the trial court's action in doing so violated due process considerations. Este argues that the default judgment, confirmed on June 16, 1997, was appropriate as the two consolidated matters had been pending for two years, the defendants had stipulated that Verret was in the course and scope of his employment at the time of the accident, and a summary judgment as to the defendants' liability had been obtained. Despite these circumstances, no answer had been filed on behalf of Verret in his capacity as a defendant in Este's suit. Only because of what Este characterizes as the defendants' "recalcitrant conduct" in this regard, *122 was she able to confirm a default judgment against Verret.
She argues that the trial court was without authority to vacate the default judgment for any of the reasons advanced by the defendants. First, she argues that the defendants were not entitled to notice of the entry of the preliminary default. Further, the court could not set aside the judgment for "ill practices" by the method chosen by the defendants.
We begin our review of the court's ruling by observing that the proceedings in this matter are confused through the fault of no single party. Rather, we are faced with consolidated matters where, as observed above, one party acts as both plaintiff and defendant and, at times, was represented by the attorney representing the party adverse to him. Further, although it was stipulated that Verret was acting within the course and scope of his employment, no answer was ever filed on his behalf in the Este suit, even in the face of a summary judgment as to liability. Thus, a preliminary default judgment against the remaining defendant, Verret, was required in order to join the issues in Este's case. Even after the preliminary default judgment was confirmed, Este filed a petition for declaratory judgment in an attempt to synthesize the default judgment against Verret and a summary judgment as to liability which had been rendered against the defendants, defendants who were liable under a theory of respondeat superior for Verret's actions.
While the defendants' motion to vacate, modify or set aside judgment alleged that the default judgment was wrongfully confirmed due to lack of notice, the defendants' memorandum in support of the motion indicates that they also focused on what they believed to be a conflict of interest in the plaintiffs' counsel's representation. Although the parties' counsel addressed the notice issue at the hearing on the motion to vacate, the hearing quickly moved to the conflict of interest issue. Following arguments as to notice, the trial court observed that it found counsel for the plaintiffs to have a conflict of interest and that the conflict constituted ill practices. After argument by the plaintiffs' counsel, the following colloquy is contained in the hearing transcript:
THE COURT: Well, maybe I'm missing something in this thing, but I'm just notI don't think it's proper for you to be representing the driver, plus the guest passenger, who obviously [sic] a conflict of interest there. And when you file suit against the driver on behalf of the guest passenger, you've got a conflict of interest....
. . . .
BY MR. RAYBURN [ Plaintiffs' counsel]:
If, Your Honor, under those circumstances, as pointed out in the opposition brief, that conflict can be remedied if the clients are made aware of it and if they waive that conflict in writing, I think. Which was done in this case.
THE COURT: But your actions can result in others having possibly to pay this Judgment off for Verret. Correct?
MR. RAYBURN: Others, correct. Absolutely.
THE COURT: Okay, I'm going to vacate the Judgment.
Thus, it is apparent the trial court vacated the judgment for ill practices, never reaching the notice issue.
La.Code Civ.P. art.2004 provides:
Art. 2004. Annulment for vices of substance; peremption of action
A final judgment obtained by fraud or ill practices may be annulled.
An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
Comment (d) of Article 2004 further provides: "No specific provision has been made regarding the manner of asserting the grounds of nullity in the above article. *123 This was thought unnecessary in view of the established jurisprudence to the effect that such grounds must be asserted in a direct action and cannot be raised collaterally."
As noted in Comment (d), an action for nullity based on fraud or ill practices has traditionally been required to be brought by ordinary proceeding rather than collaterally, in a summary proceeding. See Gazebo, Inc. v. City of New Orleans, 97-2769 (La.App. 4 Cir. 3/23/98); 710 So.2d 354. In Gazebo, a panel of the fourth circuit observed that a party is not necessarily required to raise the issue of nullity in a separate proceeding and can do so in the same proceeding, an issue we do not address here, but that "filing a motion for nullity, rather than a petition for nullity, is a problem." Id. at p. 8; 358. See also Phillips v. Space Master Intern., Inc., 96-877 (La.App. 5 Cir. 5/14/97); 696 So.2d 64.[7]
The "problem" observed in Gazebo is encountered in this case. Rather than filing a petition asserting that the default judgment was obtained through ill practices, the defendants did so by way of their motion to vacate, modify or set aside judgment. Thus, the subject matter was improperly before the trial court and, typically, a judgment cannot be annulled for ill practices in such a circumstance.
We are aware, however, that the trial court encountered a problematic situation in that it recognized that the default judgment was entered under less than ideal circumstances. As detailed above, the procedural history of this matter is confused. La.Civ.Code art. 4 provides that: "When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages." While the trial court may have arguably acted equitably in annulling the judgment pursuant to a motion rather than petition, we do not conclude that this is a situation where "no rule for a particular situation can be derived from legislation or custom." Such a situation would have required the court to proceed according to equitable principles. Rather than the absence of a rule, our appreciation of the circumstances indicates that a number of remedies were available to those attempting to reverse the default judgment so as to preclude the court's equitable jurisdiction.
As stated above, La.Code Civ.P. art.2004 permits an annulment for fraud or vices, but a party must institute such a procedure by a direct action. Further, an appeal of the default judgment was also available. Although an appeal cannot be used as a substitute for a nullity action, the sufficiency of the evidence offered in support of the default judgment can be reviewed by an appellate court. See Phillips, 96-877; 696 So.2d 64. Finally, La. Code Civ.P. arts.1972 and 1973 provide *124 grounds upon which a new trial may be granted. In fact, Article 1973 provides that a new trial may be granted simply for "good grounds."
In light of the options available to a party in a similar circumstance, we do not conclude that the trial court could permissibly resort to equitable principles in ruling. Thus, the trial court was without authority to grant a motion to vacate based on ill practices and, further, because of straightforward options otherwise available to the parties, options which were not exercised, the trial court could not turn to equitable jurisdiction. While the trial court may very well have been correct insofar as equity is concerned, a determination that we do not reach, the trial court was bound to proceed without resort to the type of equitable jurisdiction permitted, but also limited, by La.Civ.Code art. 4. Albeit an unusual question, we conclude that because remedies were available to the defendants by law that were not exercised, the trial court's ruling on the motion presented exceeded its jurisdiction.
Accordingly, we reverse the July 23, 1997 judgment which set aside the default judgment as a nullity. We further observe that the default judgment of June 16, 1997, entering judgment in favor of Este and against Verret in the sum of $80,672.92 in damages was a final judgment from which no appeal was taken. Thus, the April 28, 1999 judgment, that was entered against the defendants following trial on the consolidated matter, is vacated insofar as the court awarded damages in favor of Este. The remainder of the April 1999 judgment, i.e., that portion addressing Verret's intentional tort claim is addressed below.
Considering our finding as to the finality of the default judgment in favor of Este, and against Verret, and the summary judgment previously entered regarding the defendants' liability for Verret's actions, we enter judgment in favor of Este and against the defendants, LeBouef, Southern Sweeping, and State Farm, in the amount of $80,672.92.[8]
Due to our conclusion that the judgment of June 16, 1997, was a final judgment, we do not reach Este's assignment regarding the quantum of damages awarded.

Intentional Tort
After trial, the trial court concluded that Verret failed to prove that his injuries resulted from an intentional tort. Verret appeals this determination and argues that the evidence proves LeBouef knew prior to the accident that the tires on the truck were in poor condition. He alleges this knowledge was sufficient for LeBouef to have been "substantially certain" that an accident would result from the truck's condition.
As explained by the supreme court in Reeves v. Structural Preservation Systems, 98-1795 (La.3/12/99); 731 So.2d 208, workers' compensation is the exclusive remedy for an employee unless the injury complained of resulted from an intentional tort. See La.R.S. 23:1032(B). The supreme court stated:
[T]he meaning of "intent" in this context "is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result."
Id. at p. 6; 211 (quoting Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981)). In addressing the "substantially certain" concept, the supreme court explained that: "Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not *125 rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation." Id. at p. 9; 212.
In finding that Verret's accident did not result from an intentional tort, the trial court explained that it found "Verret failed to carry his burden to prove that the tires of the truck were bald at the time of the accident and that LeBouef knew of the condition of the tires and failed to remedy them." In concluding the evidence did not demonstrate that the tires were in poor condition, the trial court observed LeBouef's business records indicated that he changed the truck's tires every four to six months. It also relied on LeBouef's indication that he "changed the tires shortly after the accident and replaced them with old and worn tires that he acquired from Treadco in Rayne, Louisiana." This was done because the vehicle had been designated as a total loss by the insurer. The court also concluded that the photographs of worn tires introduced by Verret were not dated and did not depict the condition of the tires on the night of the accident. In conclusion, the trial court stated: "[T]he Court finds the condition of the tires on the truck at the time of the accident did not amount to an "intentional" tort by LeBouef. This accident was caused solely by the negligence of Verret."
Our review of the evidence presented does not require a different finding by the trial court. Notwithstanding the trial court's conclusion that the tires on the truck at the time of the accident were not in poor condition, Verret's version of events, which included LeBouef knowing that the tires on the truck were bald, still would not support a finding of an "intentional tort." In this case, the knowledge of worn tires and, even that injury was possible or even likely, does not constitute an intentional tort applying the supreme court's pronouncement in Reeves. Accordingly, we conclude that this assignment is without merit.

DECREE
For the foregoing reasons, the judgment of April 28, 1999, is affirmed insofar as it was entered in favor of the defendants, Bradley LeBouef, Southern Sweeping Services, Inc., and State Farm Mutual Automobile Insurance Company, and rejecting the intentional tort claims of the plaintiff, Larry Verret. All costs of this proceeding are assessed against Verret.
AFFIRMED.
NOTES
[1] Although discussed collectively due to the consolidation and the interrelated nature of the proceedings, our disposition of the matter insofar as it relates to Este is contained in the report of the companion case. See Barbara Este v. State Farm Mut. Auto. Ins. Co., et al., 99-1251 (La.App. 3 Cir. 02/02/00); 759 So.2d 125.
[2] The Joint Stipulation of Fact provides:

NOW INTO COURT, in the above entitled and numbered suit, comes Preston D. Cloyd, attorney for STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, SOUTHERN SWEEPING SERVICES, INC., and BRADLEY LeBOUEF D/B/A SOUTHERN SWEEPING SERVICES, and J. Clemille Simon, attorney for Larry Verret, who, with respect, offer the following Joint Stipulation of Fact:
1.
On May 8, 1994, while in operation of the 1991 Chevrolet sweeper truck ..., owned by BRADLEY LeBOUEF, D/B/A SOUTERN SWEEPING SERVICES and in performance of his employment duties, Larry Verret was involved in an automobile accident while travelling [sic] in a northerly direction on Lagneaux Road.
[3] The writ application was granted with the following language:

WRIT GRANTED AND MADE PEREMPTORY:
The trial court erred in denying relator's motion for summary judgment. The defendants stipulated, at the time of the accident, Larry Verret was operating a vehicle owned by Bradley LeBouef d/b/a Southern Sweeping Services, and that Larry Verret was in the course and scope of his employment. In their answer, defendants Bradley Le-Bouef d/b/a Southern Sweeping Services and State Farm Mutual Automobile Insurance Company, alleged the sole and proximate cause of the accident was the negligence of Larry Verret.
In view of the stipulation and the allegation of fault of Larry Verret in the answer filed by Bradley LeBouef d/b/a Southern Sweeping Services and State Farm Mutual Automobile Insurance Company, plaintiffrelator is entitled to summary judgment on the issue of liability of Bradley LeBouef d/b/a Southern Sweeping Services and State Farm Mutual Automobile Insurance Company under the doctrine of respondeat superior.
Accordingly, the judgment of the trial court is reversed and set aside. It is ordered that judgment be entered in favor of plaintiff and against defendants, Bradley LeBouef d/b/a Southern Sweeping Services and State Farm Mutual Automobile Insurance Company, on the issue of liability of these defendants.
[4] On June 24, 1997, Este filed a petition for declaratory judgment seeking a determination as to the defendants' status with regard to Verret, due to the summary judgment as to liability entered against the defendants, and the default judgment confirmed against Verret. She further alleged her entitlement to a declaratory judgment indicating that the defendants were solidary obligors with Verret for the full amount of the $80,672.92 default judgment confirmed against him. The matter was set for a hearing to show cause in July 1997. There is no indication that the hearing was ever held due to the motion to vacate filed by the defendants which is discussed below.
[5] For decretal language denying the motion, see Este, 99-1251; 759 So.2d 125.
[6] For decretal language as to the motion for sanctions, see Este, 99-1251; 759 So.2d 125.
[7] In their brief, the defendants refer to the Louisiana Supreme Court case of Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983) and assert that, in Kem Search, the court annulled a judgment whose enforcement would have been unjust. The defendants contend that the court reversed and annulled the judgment after the filing of a motion to annul in the same action. We disagree with this interpretation of the case. As pointed out in the plaintiffs' reply brief, the court clearly pointed out that, in a previous action, the plaintiff filed suit to collect on an open account. After confirmation of a preliminary default, the court explained that the defendant "brought this action to annul the judgment." Id. at p. 1068. The only indication of a motion being brought is in the editorial introduction of the case placed before the headnotes in the reported version of the opinion. The caption indicates that the "[p]roceeding was instituted on motion of buyer to annul a default judgment entered in favor of seller in a suit on an open account." This statement is not, of course, part of the opinion and is not written by the court. There is no further statement in the court's opinion indicating that the annulment proceeding was brought by motion. On the contrary, as noted above, the court's opinion indicates that it was brought by a separate proceeding. In any event, the case does not stand for the proposition that an annulment action can be brought by motion rather than by petition.
[8] For decretal language regarding the Este matter, see Este, 99-1251; 759 So.2d 125 in which we reverse the judgment of April 28, 1999 insofar as the defendants were cast in judgment in favor of Este, vacate the July 23, 1997 judgment setting aside the default judgment, and enter judgment in favor of Este, and against the defendants, in the full sum of the default judgment.