866 So.2d 1045 (2004)
Robert B. KEATY, Thomas S. Keaty and Keaty and Keaty
v.
Roy A. RASPANTI.
Robert B. Keaty, Thomas S. Keaty and Keaty & Keaty
v.
Roy A. Raspanti.
Nos. 2003-CA-1080, 2003-CA-1499.
Court of Appeal of Louisiana, Fourth Circuit.
February 4, 2004.
Rehearing Denied March 15, 2004.
*1047 John C. Anderson, Fenet & Anderson, Baton Rouge, LA, for Thomas Keaty, Plaintiff/Appellee.
David S. Daly, Allen & Gooch, Metairie, LA, for John S. Keller, Plaintiff/Appellee.
Roy A. Raspanti, and Joseph P. Raspanti, Metairie, LA, and Thomas E. Gibbs, Baton Rouge, LA, for Roy Raspanti, Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS, SR., Judge MICHAEL E. KIRBY, and Judge MAX N. TOBIAS, JR.).
MAX N. TOBIAS, JR., Judge.
In these consolidated cases, the appellant, Roy A. Raspanti ("Raspanti"), appeals from the judgment of the trial court, which awarded him the sum of $34,605.08 as sanctions against Thomas S. Keaty ("Thomas Keaty"). (2003-CA-1499).[1] In *1048 addition, Raspanti appeals from a second judgment that dismissed his motion to fix sanctions against appellee, John S. Keller ("Keller"), attorney for Thomas Keaty. (2003-CA-1080). After a review of the record and applicable law, we amend the judgment and affirm as amended.
The procedural history leading up to this dispute between Robert B. Keaty and Thomas S. Keaty (hereinafter "the Keatys") and Raspanti began in 1985 when Connie Byrd retained the Keatys' services, on a contingency basis, in connection with the severe personal injuries received by her then-minor son, Gregory Byrd.[2]
Suit was subsequently filed on that claim in the 26th Judicial District Court for the Parish of Bossier against the Bossier School Board ("school board"), Pellerin Milnor Corporation ("Pellerin Milnor"), and Pellerin Laundry Machinery Sales Company, Inc. On 28 March 1987 Pellerin Milnor settled, and the matter proceeded to trial against the school board.
The trial court ruled in favor of the school board and the Keatys filed a notice of appeal. Because of a dispute on the fees owed to the Keatys, the Byrds hired attorney John Litchfield to negotiate with the Keatys. As a result, the Byrds and the Keatys entered into a compromise agreement and Litchfield notified the Keatys, in writing, that they were discharged as attorneys for the Byrds. Raspanti was substituted as the Byrds' attorney, and the Keatys filed an intervention in the Bossier Parish suit seeking additional attorney's fees should the appeal against the school board be successful.
On 10 May 1988, the Second Circuit Court of Appeal reversed the judgment in favor of the school board and remanded the case. The school board subsequently settled, and Raspanti collected his contingency fee on that settlement as per his contract with the Byrds. In July 1991, the trial court dismissed the Keatys' intervention on a motion for summary judgment. The court reasoned that the 3 December 1987 compromise between the Keatys and the Byrds settled all fee disputes, not just those relating to the claim against Pellerin Milnor. That judgment, although appealed, was dismissed as untimely by the Second Circuit and the Supreme Court denied an application for supervisory writs.
In November 1991 and February 1992, the Keatys sued Raspanti in Civil District Court for the Parish of Orleans, seeking a portion of the attorney's fees collected by Raspanti. The November suit alleges tortious interference with contract and unjust enrichment, while the February suit seeks an apportionment of the attorney fees on a quantum meruit basis. In response, Raspanti filed exceptions of prescription, no cause of action, res judicata, and a motion for summary judgment. All were denied at the trial level and this court denied an application for supervisory writs to review the trial court judgment.
In May 1996, Raspanti reurged his motion for summary judgment making the additional argument that once the Keatys were denied additional fees from the Byrds by the district court in Bossier Parish, they could not recover additional fees from him. In support, Raspanti pointed to prior admissions made by the Keatys that the source of their claim was the contract with the Byrds and that they had no contract with Raspanti. The trial court framed the issue as "[W]hen does a ruling of another court on a similar issue preclude *1049 the Court from deciding it again [?]" The court then granted Raspanti's motion for summary judgment, concluding that the Keatys had compromised their claim to future attorney's fees and that the Bossier Parish district court had already rejected their claim for additional fees, albeit the claim was against the Byrds. Although the Keatys appealed, the judgment of the trial court was affirmed. See Keaty v. Raspanti, 96-2839 (La.App. 4 Cir. 5/28/97), 695 So.2d 1085, writ denied, 97-1709 (La.10/13/97), 703 So.2d 614.
Thereafter, Raspanti filed a motion for sanctions against Keaty, which the trial court dismissed pursuant to exceptions of res judicata and prescription. This Court reversed and remanded the case to the trial court after finding the following:
We find that the Keatys knew and must have known all along that their claim for tortious interference had prescribed. We find that the Keatys knew that all of their claims against the Byrds were disposed of in the Bossier Parish proceedings. We find that the Keatys did not reasonably rely on Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978), in asserting a claim against Raspanti. We find that the Keatys' answers to Raspanti's request for admissions, in which they denied the non-existence of a contract between them and Raspanti, was disingenuous. We find that the entire proceedings by the Keatys against Raspanti was [sic] knowingly without foundation, crafted for purposes of harassment and carried out in a manner designed to deliberately prolong the proceedings needlessly.
Keaty v. Raspanti, XXXX-XXXX, p. 8 (La. App. 4 Cir. 2/7/01), 781 So.2d 607, 612. Consequently, we remanded the matter to the trial court to determine the amount of sanctions.[3]
Upon remand, the trial court held an evidentiary hearing and, on 9 June 2003, entered judgment against Thomas Keaty, awarding Raspanti the sum of $34,605.08, together with judicial interest from 27 June 1997, and all costs from 8 November 2002 until the date of judgment. Raspanti contends that the trial court erred and should have awarded him fees and costs in the amount of $132,068.35, with judicial interest from 29 May 1992, the date the first motion for sanctions was filed.[4]
Article 863 of the Louisiana Code of Civil Procedure provides in pertinent part:
A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper *1050 purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

* * *
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
Once a violation of La. C.C.P. art. 863 is found and sanctions are imposed, the determination of the type and/or the amount of the sanction is reviewed on appeal utilizing the "abuse of discretion" standard. Connelly v. Lee, 96-1213, p. 4 (La.App. 1 Cir. 5/9/97), 699 So.2d 411, 414, writ denied, 97-2825 (La.1/30/98), 709 So.2d 710. Article 863 authorizes an award of "reasonable" and not necessarily actual attorney fees. The goal to be served by imposing sanctions is not wholesale fee shifting, but correction of litigation abuse. Joyner v. Wear, 27,631, p. 14 (La. App. 2 Cir. 12/6/95), 665 So.2d 634, 642, writ denied, 96-0040, 96-0042 (La.2/28/96), 668 So.2d 370.
Four factors have evolved which must be considered in arriving at an appropriate sanction award. They are: (1) What conduct is being punished or is sought to be deterred by the sanction? (2) What expenses or costs were caused by the violation of the rule? (3) Were the costs or expenses "reasonable" as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention? (4) Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed? Butler v. Reeder, 98-484, p. 14 (La.App. 5 Cir. 12/29/98), 728 So.2d 888, 895, writs denied, 99-1026, 99-1035 (La.5/28/99), 743 So.2d 673, 674.
Applying these factors to the case before us, we find that the trial court abused its vast discretion in awarding only $34,605.08 to Raspanti. In reviewing the transcript of the proceedings, we find that the trial court inappropriately considered a factor no longer at issue, namely, whether the Keatys bore all responsibility for the frivolous litigation. The trial court was bound by our findings of fact rendered in Keaty, XXXX-XXXX, and we also reject the trial court's statement that "the system" was in any way at fault for the Keatys' ability to file and maintain spurious and harassing litigation against Raspanti.[5]
The trial court obviously felt sorry for Keaty when rendering its decision when it stated:
But my job is to make a judgment in this case. And I feel for both sides in this case, not one more than the other but both sides have had problems. Of course, you might say that the Keatys brought all of this upon themselves way back when they lost the faith of the Byrds.
It is evident from the trial court's comments that it did not find Thomas Keaty entirely at fault for his actions; in fact, the trial court also blames Raspanti for what occurred. For these and other reasons discussed further in this opinion, we find *1051 the trial court abused its discretion in the awarding of sanctions of only $34,605.08.
We note that the vast amount of attorney's fees expended in defending the lawsuit and pursuing the motion for sanctions were incurred by Raspanti himself. Although not raised by Thomas Keaty, we note that jurisprudence exists in this circuit that holds that an attorney cannot recover an attorney's fee for representing himself. See Westenberger v. Bernard, 160 So.2d 312, 314 (La.App. 4 Cir.1964). However, we decline to follow this case for several reasons.
First, Westenberger relies on the Louisiana Supreme Court case of Ealer v. McAllister & Co., 19 La. Ann. 21 (La.1867) for the proposition that "[w]hen an attorney brings a suit in his own name, he cannot recover counsel's fees." However, Ealer makes no such holding. The Court stated as follows:
The claim or right urged in this Court, by [plaintiff] George G. Ealer, to recover counsel fees for obtaining judgment and realizing the money in this suit, as agent of Henry A. Ealer, is inconsistent with his pleadings and position he occupies as against [defendant] Jones. He sued, and has contested throughout the litigation, as principal and owner; has denied that Henry A. Ealer has any interest, and persistently resisted the efforts of Jones to obtain the money belonging to Henry A. Ealer. He cannot, in the same proceedings, claim to be the owner and the agent of the owner of the same thing.
A second reason not to follow Westenberger is that it involved an attorney as plaintiff bringing suit in his own name. In the instant case, Raspanti was the defendant and was forced to expend his time defending a frivolous lawsuit, as well as pursuing sanctions clearly provided for in La. C.C.P. art. 863.
Third, it is well recognized in the jurisprudence of this state that as a general rule, attorney's fees are not allowed except when authorized by statute or contract. Killebrew v. Abbott Laboratories, 359 So.2d 1275, 1278 (La.1978). The starting point in the interpretation of any statute is the language itself. Riddle v. Bickford, 2000-2408, pp. 9-10 (La.5/15/01), 785 So.2d 795, 802. We note that the statute makes no distinction between one represented by counsel and a pro se litigant. Thus, there is no reason to distinguish between the attorney's fees generated by Raspanti and the attorneys working on his behalf, as long as the fee is reasonable.
Fourth, we note the holding in Hoskins v. Ziegler, 506 So.2d 146 (La.App. 4 Cir. 1987), where this court held that an attorney representing himself as plaintiff for collection of an open account for his attorney's fee was entitled to recover reasonable attorney's fees pursuant to La. R.S. 9:2781. La. R.S. 9:2781 is a special statute that allows the recovery of reasonable attorney's fees when a debtor fails to pay to the creditor the debt owed upon an open account. By analogy, La. C.C.P. art. 863 is a special statute that allows a person to recover a reasonable attorney's fee from the person who files frivolous pleadings.[6]
Finally, we recognize that the purpose of article 863 is to deter frivolous litigation. To hold that an attorney who must defend *1052 himself or herself cannot recover reasonable attorney's fees, including his or her own lost time and expenses in defending himself or herself, would frustrate the purpose of the statute and possibly reward those who persist in maintaining litigation such as that found in this case.
After reviewing the record and exhibits that itemize the work performed defending Raspanti from the suit against him and in prosecuting his motion for sanctions, we find that Raspanti is entitled to recover the sum of $107,605.95. This amount is itemized as follows:

Joseph Raspanti $ 7,731.25
Bill Cherbonnier $ 9,887.12
Roy Raspanti $77,298.25
Stephen Babin $ 762.50
Bruce Danner $ 1,053.00
Thomas Gibbs $ 6,500.00
Paralegal $ 660.00
Costs $ 3,713.83

We agree with the trial court's awards with respect to the attorney's fees of Thomas Gibbs and Joseph Raspanti.[7] In addition, we find no abuse of discretion in the trial court's award for the paralegal expenses and costs. However, we find that the trial court abused its vast discretion in several other instances.
First, we address the statement of the trial court that more than one attorney was working on the file at the same time. We know of no law that precludes the practice; in fact, such is often the case.[8] We have reviewed the various invoices and do not find an abuse with regard to "double billing." Thus, we find that the invoice from Stephen Babin ($762.50), who represented Raspanti in connection with Thomas Keaty's last minute bankruptcy attempt, is supported by the record.
We next address the invoice of Bruce Danner ($1,053.00), who represented Raspanti at the October 2002 hearing on the motion for sanctions. Danner's invoice for services rendered is attached as an exhibit to Raspanti's brief. This situation, however, is different from that of Laborde's, discussed supra at n. 7. Obviously, it was impossible for Raspanti to introduce Danner's invoice into the record at the time of the hearing. We have reviewed his invoice and find that it is reasonable and well supported by the record as reflected by the transcript of the hearing. We find that the trial court abused its discretion by failing to account for Danner's services when rendering the judgment.
The trial court also disallowed the attorney's fees of Bill Cherbonnier, who represented Raspanti for about one year. Cherbonnier was retained after Joseph Raspanti told Roy Raspanti that he needed assistance in obtaining subpoenas and certain bank records of the Keatys. Cherbonnier was initially consulted in September 1994, enrolled as counsel of record on or about 1 February 1995, and attended a status conference with the court on 8 February 1995. A motion to disqualify Cherbonnier was subsequently filed on 7 July 1995; the motion was granted in October of that year.
The memoranda in the record, both in support of the motion and in opposition thereto, reveal that Cherbonnier was a member of a law firm that had represented *1053 Keaty & Keaty in unrelated matters some six years earlier. Cherbonnier was not involved in those cases, although it was alleged that he had knowledge of confidential information adverse to the Keatys' interests. While we are not called upon to determine whether the trial court correctly granted the motion to disqualify, we do not find any authoritative legal support to deny Raspanti's claim to recover as sanctions the amount he paid for the work performed by Cherbonnier. Consequently, we find that the trial court abused its discretion by disallowing the fees.
Finally, we turn to the four separate statements submitted by Raspanti, three of which are contained in the record and the fourth is included in his appellate brief. The three statements in the record are as follows: (1) Exhibit 5 in the amount of $59,353.25 for work performed from 11/14/91 to 6/14/01; (2) Exhibit 6 in the amount of $11,729.00 for work performed from 6/14/01 to 6/13/02; and (3) Exhibit 7 in the amount of $6,216.00 for work performed from 6/24/02 to 10/16/02, for a total of $77,298.25. The trial court reviewed these three statements and awarded only $16,000.00, stating:
Then we come to Mr. Raspanti's participation. Reviewing the exhibits, he participated fully and alone, you might say, in '91 and '92, when the matter was originated initially. And looking back in hindsight, this matter should have been resolved back in '91 and '92. So, it's not all the opposition's fault. It's the system's fault in a way with hindsight. And then after that, I came into the case, his brother was the chief counsel, and then Mr. Gibbs came in.
In fairness to the situation, I feel that an award of $16,000 for his fees would be proper.
We find that the trial court improperly relied on an irrelevant issue, namely, that the matter could have been disposed of many years earlier. We have already held that the Keatys had carried out the proceedings "in a manner designed to deliberately prolong the proceedings needlessly." Keaty, supra, XXXX-XXXX at p. 8, 781 So.2d at 612. While we acknowledge that the present predicament is, in part, the product of the district court's repeated failure to recognize that the claim asserted by the Keatys was prescribed, that does not excuse or mitigate the Keatys' presentation of the unfounded action. This Court found that they knew from the outset that their claim was prescribed. Consequently, the Keatys must accept full responsibility for the acts taken that violated La. C.C.P. art. 863. Finding that the trial court abused its discretion in awarding only $16,000.00, we hold that Raspanti is entitled to recover the full amount of his fees as reflected in Exhibits 5-7.
However, we cannot award Raspanti his attorney's fees incurred on appeal in the amount of $13,847.25 as article 863 sanctions. "We believe that the authority to impose art. 863 sanctions is limited to the trial court." Hampton v. Greenfield, 618 So.2d 859, 862 (La.1993). Thus, it would be improper for this court to look beyond the record and award sanctions under La. C.C.P. art. 863. Id.
Consequently, we amend the judgment to award sanctions in the total amount of $107,605.95. This Court has previously found that the conduct being punished was deliberate, knowingly without any foundation and crafted for the sole purpose of harassment. As a result of the article 863 violations, Raspanti was forced to incur vast costs and expenses, which are amply supported by the record before us, and which would not have been necessary but for the Keatys' wrongful conduct. We also find that the costs and expenses were reasonable in light of the fact that this matter *1054 took over eleven years to complete. In Borne v. New Orleans Health Care, Inc., 616 So.2d 236 (La.App. 4 Cir.1993), the law firm of Middleberg, Riddle & Gianna ("Middleberg") was forced to defend an unsupported suit for defamation filed in April 1989. After the trial court granted Middleberg's motion for summary judgment on 28 September 1990, the law firm filed a motion for sanctions. On 10 January 1992, the trial court granted Middleberg's motion for sanctions and entered judgment for $82,047.84 in sanctions. The award represented $52,047.84 for attorney's fees incurred from the filing of suit until the granting of summary judgment, and $30,000.00 for fees incurred from the granting of summary judgment through its appeal, and for those fees incurred for prosecuting the motion for sanctions. This Court found that the assessment of sanctions in the amount of attorney's fees incurred by Middleberg was supported by the record and was not an abuse of the trial court's discretion. Id. at 239.
Finally, we find that the sanction that we impose is the least severe sanction adequate to achieve the purpose of the rule under which it was imposed. This was not a one-time violation of article 863. Instead, this was a concerted course of conduct that took place over many years. Thus, we amend the judgment accordingly.
Raspanti also assigns as error the trial court's decision to award judicial (legal) interest from 27 June 1997, the date the second, and successful, motion for sanctions was filed, and not from 1 May 1992, the date that the first motion for sanctions was filed.
Regardless of the reasons under which the first motion for sanctions was denied, we find no error on the part of the trial court in awarding interest from the date the successful motion for sanctions was filed. This court has already compared a motion for sanctions under La. C.C.P. art. 863 to a tort action by applying a one-year prescriptive period to the cause of action. See Keaty, XXXX-XXXX, p. 4, 781 So.2d at 610. According to La. R.S. 13:4203, "[l]egal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts." However, because a judgment in Raspanti's favor did not result from the 1992 motion, it would be inappropriate to award legal interest from its filing date. Consequently, that portion of the judgment is affirmed.
Finally, Raspanti asks that we reverse the trial court's judgment that granted the exceptions of res judicata and prescription filed by Keller in response to the motion to fix sanctions filed by Raspanti against him in June 2001. Raspanti argues that the judgment should be set aside and the matter remanded so that the trial court may determine an appropriate award for violation of La. C.C.P. art. 863. In response, Keller maintains that Raspanti did not follow the procedures required by La. C.C.P. art. 863 and its jurisprudence; consequently, the exceptions were properly granted.
In connection with this assignment of error, Raspanti has filed a motion to supplement the appellate record with a 12 February 1998 rule to show cause why the Keatys and Keller should not be ordered to pay sanctions under La. C.C.P. art. 863. While a stamped copy of the rule to show cause is attached to the motion, the original is missing from the record. Raspanti contends that the pleading demonstrates that a timely motion was filed against Keller.[9]
*1055 Although we hereby grant the motion to supplement the record, we deny the relief sought by Raspanti. While the record, as supplemented, now demonstrates that a motion to assess sanctions against Keller was timely filed by Raspanti, the record does not reflect whether Keller was served with the rule to show cause and/or that he filed a response, thereby making an appearance.
We note that La. C.C.P. art. 2132 provides that a record on appeal that omits a material part of the trial record may be corrected on appeal by order of the appellate court, which has been done herein. However, we find that the record has not been supplemented in such a way to permit us to render a decision on this issue. As the appellant, Raspanti bears the burden of proving that the trial court erred in its judgment of dismissal. This he cannot do on the record before us. Consequently, we find the assignment of error to be without merit.
Based on the foregoing, we amend the judgment in favor of Raspanti and against Keaty and render judgment in the amount of $107,605.95, together with legal interest thereon from 27 June 1997 until paid. All costs of this appeal are assessed against Keaty. In all other respects, the judgment is affirmed.
MOTION TO SUPPLEMENT RECORD GRANTED; JUDGMENT AMENDED; AFFIRMED AS AMENDED.
ARMSTRONG, C.J., concurs in the result reached by the majority.
MURRAY, J., concurs in part, dissents in part with reasons.
MURRAY, J., concurs in part, dissents in part with reasons.
Because I do not find the trial court abused its discretion in awarding sanctions, I would affirm the judgment of the trial court in its entirety.
The jurisprudence has interpreted La. C.C.P. art. 863 as mandating the imposition of sanctions once the court determines that an Article 863 violation has occurred. See Derouin v. Champion Ins. Co., 580 So.2d 1043, 1046 (La.App. 3 Cir.1991). In our earlier decision in this case, this court found an Article 863 violation had occurred and remanded the matter for a determination of the appropriate sanction. On remand, following an evidentiary hearing, the trial court articulated detailed reasons for discounting the various attorney's fees and costs Mr. Raspanti claimed, and calculated the appropriate sanction to be $34,605.08 ($30,891.25 in attorney's fees and $3,713.83 in costs).
On appeal, Mr. Raspanti argues that the trial court abused its discretion in failing to award the full amount of attorney's fees and costs he documented, which totaled $132,068.35. He further argues that this court should also award him expenses ($660) and attorney's fees ($13,847.25) for this appeal, bringing the total sanction amount to $144,866.55. Mr. Keaty does not challenge the amount of the sanction.
Appellate courts review a challenge to the amount of sanctions awarded by the trial court using the abuse of discretion standard. Dubois v. Brown, XXXX-XXXX, p. 4 (La.App. 1 Cir.5/10/02), 818 So.2d 864, 866, writ denied, XXXX-XXXX (La.10/14/02), 827 So.2d 421. In this appeal, the majority has determined that the trial court abused its great discretion in assessing only $34,605.08 in sanctions. In making this determination it finds that the trial court improperly considered whether the Keatys bore sole responsibility for the litigation. As the majority notes, the court *1056 did express sympathy for all parties to this litigation and stated that, to some extent, the "system" was a contributing factor. However, I respectfully disagree with the conclusion that these gratuitous statements, in the context of the court's articulated reasons for its award of sanctions, mandate a finding that the amount awarded was an abuse of the court's vast discretion.
In deciding whether the trial court abused its discretion we are guided by the language of the statute, which states that an appropriate sanction "may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee." La. C.C.P. art. 863(D)(emphasis supplied).
Construing the term "reasonable" in this context, Justice (then Judge) Knoll has stated that "reasonable" does not necessarily equate to actual fees and expenses and that "[t]he `reasonableness' finding must also include the [Article's] goals of deterrence, punishment, and compensation." Derouin, 580 So.2d at 1046.
Similarly, in construing the parallel federal provision (Rule 11), a federal court has reasoned that, because a trial court is required to select the least severe sanction appropriate to accomplish the Rule's purpose, "a monetary sanction should never be based solely on the amount of attorney's fees claimed by the injured party, even where a court determines that the amount of the sanction should equal the fees claimed by the injured party." In re Kunstler, 914 F.2d 505, 523 (4th Cir.1990). Continuing, the court noted that "[b]ecause the amount of a monetary sanction is not based solely on any claimed amount of attorney's fees, [but rather on four factors enumerated herein,]... the risk of an erroneous calculation based on fee statements is less troublesome in the context of a Rule 11 sanction than in attorney's fees cases." Id. Those four factors are: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation." Id.
I find that logic compelling. In my opinion, we should focus on whether the award of attorney's fees and costs was reasonable, keeping in mind that this is a claim for sanctions under article 863 and not an attorney's fee case. To determine if the award was reasonable in light of the need to deter the conduct that gave rise to the imposition of sanctions we should consider the reasons articulated by the court with regard to the individual amounts claimed by Mr. Raspanti.
As to Mr. Raspanti's claim for the $16,573.61 bill for Joseph Raspanti's (his brother's) attorney's fees, the trial court discounted this bill by fifty percent and found that $7,731.25 was the appropriate amount to include in the sanction award. Although the trial court does not state why it awarded only fifty percent of the amount claimed, we note that Roy Raspanti testified that John Litchfield (the attorney who represented the Byrds to negotiate their fee dispute with the Keatys) paid half of this bill. Roy Raspanti further testified that Mr. Litchfield did this pursuant to an agreement that he would pay half of the costs of defending any suit to apportion fees.
As to Mr. Raspanti's claim for the $9,887.12 bill for Bill Cherbonnier's attorney's fees, the trial court totally disallowed this claim. At the hearing, it was disclosed that Mr. Cherbonnier was retained for a particular purposeobtaining bank recordsand that, despite the above agreement, Mr. Litchfield refused to pay half of Mr. Cherbonnier's bill. Because Mr. Cherbonnier was disqualified, the trial *1057 court concluded that his fee should not be included in the sanction award.
As to Mr. Raspanti's claim for the $10,000 bill for Thomas Gibb's attorney's fees, the trial court discounted this amount to $6,500. Although Mr. Gibbs did not itemize his time, the court stated that it personally could attest to Mr. Gibbs's role as counsel of record and his active participation in the case during the periods 1995, 1996, and 1997.
Finally, as to Mr. Raspanti's claim for his own attorney's fees, which he claimed totalled $86,918.25 through October 25, 2002, the trial court found that "fairness to the situation" dictated an appropriate award for his fees was $16,000. In discounting that figure, the trial court, as Mr. Raspanti stresses, acknowledged that Mr. Raspanti's fees were well documented and that Mr. Raspanti "spent much more time." Nonetheless, the trial court reasoned:
We can't let attorney's fees rule in these type of sanctionable cases. The Court has to look at each case and see. Otherwise, its ipso facto. I mean, you could run up a million dollars in attorney's fees without much trouble. And if it was ipso facto, that would be sanctionable... And I'm not saying Mr. Raspanti didn't do the work. But in many points in time, in reviewing the exhibits, there were three attorney meters running at the same time in some conferences; Mr. Gibbs, Mr. [Joseph] Raspanti, [and] Mr. [Roy] Raspanti.[1]
As to the costs, the trial court likewise conducted a detailed review of the various items Mr. Raspanti documented and excluded certain items, stating:
The list of the costs, came up to $5,212.32. I've taken out the ticket for Jay Bachrach, $484 airline, hotel $600, the hotel of $502.18, the bankruptcy cost of $150. When you take those listed cost out, I come up with $2,966.53, plus the deposition cost that was not added in that list of cost of $747.30 for the Byrds deposition cost.
The trial court thus found the sanctionable costs totalled $3,713.83.
The trial court thus fixed the total amount of sanctions at $34,605.08. In reviewing the reasonableness of such an award, an important factor to consider is the trial court's own knowledge of the facts. "The trial judge is in the best position to review the factual circumstances and render an informed judgment as he is intimately involved with the case, the litigants, and the attorneys on a daily basis." Thomas v. Capital Security Services, Inc., 836 F.2d 866, 873 (5th Cir.1988); see also Rivet v. State, Dep't of Transp. and Dev., 96-0145, p. 12 (La.9/5/96), 680 So.2d 1154, 1161 (listing "the court's own knowledge" as a proper factor to consider in determining the reasonableness of attorney's fees).
I cannot conclude that the $34,605.08 award by the trial court, which has actively overseen this case for a span of several years, was an abuse of discretion. This is especially so given the detailed reasons, discussed above, the trial court articulated for discounting the various amounts of attorney's fees and costs Mr. Raspanti claimed.
For the above reasons, I respectfully dissent in part.
NOTES
[1] This matter originally involved Robert B. Keaty, Thomas S. Keaty, and the law firm of Keaty & Keaty, although it has been disputed that a law partnership ever existed between them. Later, Raspanti sought sanctions only from Robert B. and Thomas S. Keaty. Following his disbarment, see In re Keaty, XXXX-XXXX (La.9/29/00), 769 So.2d 1175, Robert B. Keaty filed for bankruptcy and all proceedings against him were stayed. Consequently, the judgment entered in Raspanti's favor is against Thomas S. Keaty alone.
[2] Gregory Byrd was 15 years of age at the time of the accident. Once he attained majority, Gregory Byrd became a party plaintiff.
[3] The record demonstrates the reluctance of the trial court to hear Raspanti's motion for sanctions. He obviously was of the opinion that the motion was unseemly as a dispute between two members of the bar. Nevertheless, whether unseemly or not, our law affords an aggrieved party the right to seek sanctions of another whose pleadings are not properly grounded in fact.
[4] Raspanti also seeks expenses and reasonable attorney's fees for this appeal.
[5] The trial court's belief that "the system" was partially at fault clearly affected the amount of sanctions imposed by the court for time spent by Raspanti as discussed further infra.
[6] We note that to permit a lawyer to recover his or her fees for representing himself or herself in a case for article 863 sanctions, while not permitting a non-lawyer to recover the time and expenses that he or she has incurred while defending a sanctionable pleading, may seem unfair. That issue is not before us and is reserved for another day; however, we do not read article 863 as prohibiting a non-lawyer from recovering his or her lost time and expenses in an article 863 matter.
[7] Although Raspanti asks this court to award $600.00 for the legal services of Gregory Laborde, we note that Laborde did not provide services until November 2002, after the hearing on the motion to fix sanctions. The bill from Laborde is not a part of the record, but instead is attached as an exhibit to Raspanti's brief. Accordingly, we cannot consider it.
[8] In fact, the plaintiffs were represented by two different attorneys at the same time, John Keller and John deGravelles.
[9] We note that a memorandum in support of the rule to show cause is part of the record on appeal.
[1] There were three other attorneys who provided services to him and whose bills the trial court did not allow. Stephen Babin ($762.50), Gregory Laborde ($600), and Bruce Danner ($1,053). The trial court did, however, allow $660 for Mr. Raspanti's paralegal's fees.