JOAN BERNARD ARMSTRONG, Chief Judge.
11Plaintiffs-appellants, Shirley Gaden and her daughter, Sally Ellington (who refers to herself by her maiden name, Sally Ellington[1], in the joint appellate brief filed on her behalf and that of her mother), appeal a judgment in favor of Sally Ellington only, condemning her former spouse, the defendant-appellee, Paul Kevin Galvin, to pay her “all reasonable costs incurred in the claim herein”; and dismissing the claims of Shirley Gaden against her former son-in-law, Paul Kevin Galvin, each party to bear their own costs. The judgment makes no mention of Sally Ellington’s claim against Mr. Galvin for attorney fees, but it is clear from the reasons for judgment that the trial court considered and denied Ms. Ellington’s claim for attorney fees.
I. Sally Ellington’s claim for attorney fees.
As the trial court noted in its reasons for judgment, this suit combines two claims against Mr. Galvin: The first claim is that of Ms. Sally Ellington against her former husband for $13,700.00 in attorney’s fees (calculated at a rate of $100.00 per hour) and costs in connection with problems encountered in resolving the property settlement executed between them. Ms. Ellington complains that the |2trial court erred when it declined to award her attorney fees. The trial court awarded her costs, but denied her claim for attorney fees, finding that as a matter of law an attorney who represents himself is not entitled to attorney fees, citing Lambert v. Byron, 94-954 (La.App. 3 Cir. 2/8/95), 650 So.2d 1201, 1203 and Westenberger v. Bernard, 160 So.2d 312 (La.App. 4 Cir.1964).
Ms. Ellington’s claim is based on an undisputed “Act of Partition and Settlement of Community” executed by and between Ms. Ellington and Mr. Galvin on June 9, 1990. Each party assumed certain obligations. Mr. Galvin concedes that he failed to discharge his obligation under the Act of Partition to make payments on a mortgage on property located at 816-818 Roosevelt Street in New Orleans. Mr. Galvin does not dispute that fact that the document provides, in pertinent part, that:
Each party agrees to indemnify and hold harmless the other for any loss or damage, including attorneys’ fees and costs, incurred as a result of the failure by *384 either or both of them to pay and discharge any obligation assumed on this partition.
We find it significant that Mr. Galvin made no argument in the trial court or in this court concerning the intention of the parties regarding the attorney fee language quoted immediately above. He offered no evidence to show that it should not apply to Ms. Ellington’s legal work. As noted previously, the only reason given by the trial court for denying Ms. Ellington’s claim was legal, not factual. The trial court did not mention it in its judgment and denied the claim in its reasons for judgment as a matter of law, citing Lambert and Westenberger, supra. However, the trial court awarded Ms. Ellington costs, thereby implicitly ^recognizing the validity of her contention that Mr. Galvin failed to properly discharge his obligations under the partition agreement. Regardless, Mr. Galvin admits that he did not discharge his obligations under the agreement.
It is undisputed among the parties that attorney fees are not generally awarded, except in those instances where provided by statute or contract. Ms. Ellington contends that the above quoted provision in the Act of Partition provides a contractual basis for her claim for attorney fees. Mr. Galvin’s only arguments on this issue were that:
a. Sally Gaden [Ellington] could offer no proof whatsoever that she paid any attorney’s fees to anyone; and
b. The law of this state does not allow one to collect attorney’s fees in self-help situations as the one before the court. Lambert v. Byron, 94-954 (La.App. 3 Cir. 2/8/95), 650 So.2d 1201, 1203; Westenberger v. Bernard, 160 So.2d 312 (La.App. 4 Cir. 1964).
Westenberger does not explain why an attorney who brings suit in his own name cannot collect attorney fees in those cases where a third party attorney would be entitled to collect: it merely cites Ealer v. McAllister & Co., 19 La.Ann. 21 (1867). This Court has declined to follow Westen-berger in citing Ealer as “Ealer makes no such holding.” Ready v. Raspanti, 03-1080, 03-1499, p. 7 (La.App. 4 Cir. 2/4/04), 866 So.2d 1045, 1051. In Ready this Court awarded attorney fees to an attorney, Roy Raspanti, who represented himself in claiming the fees. As this Court noted:
Thus, there is no reason to distinguish between the attorney’s fees generated by Raspanti and the attorneys working on his behalf, as long as the fee is reasonable.
Id., 03-1080, 03-1499, p. 8, 866 So.2d at 1051.
Therefore, we find Lambert unpersuasive because it relies on both Westenberger and Ealer. Additionally, we are not persuaded by the conclusion in \4Lambert that the language concerning “referring” a note for collection must necessarily mean a third-party attorney and by analogy could be extended to defeat Ms. Ellington’s claim based on the language in the instant case relating to the term “incurred” found in the Act of Partition. The attorney fee clause in the Act of Partition is really just boiler-plate language, and there is nothing in the record to suggest otherwise.
We might add that to allow Sally Ellington to collect attorney fees for the work she performed works no prejudice upon Mr. Galvin. Moreover, Mr. Galvin has not shown what difference it will make to him whether he pays Ms. Ellington or another attorney. However, he is entitled to object to the reasonableness of her fee, just as he would be to any attorney employed against him, but he has not done so.
*385 We see no public policy to be served by depriving an attorney of a fee when she represents herself in those instances where the law would permit a third party attorney to recover such a fee. We cannot see how an attorney’s time is less valuable or less worthy of recompense when spent representing herself than when spent representing others. If those instances where the law would allow a third party attorney to collect a fee from the opposing party for services performed for an attorney claimant, we can see no clear basis for denying the attorney who represents herself to collect such a fee. We recognize that the Third Circuit adopted a different line of reasoning in Lambert, supra.
To argue that an attorney who represents herself is generally not entitled to attorney fees because she incurs no out-of-pocket expenses in representing herself is implicitly based on the argument that her time and legal expertise have no value. This argument does not take into account that the attorney who represents herself |shas a disadvantage in the time it takes to research, prepare and argue her case, time she would not have to spend if she were represented by a third party attorney, a disadvantage that is proportional to the monetary advantage referred to in Lambert. Therefore, it is only reasonable to be compensated for the time and effort. The interest of the opposing party should only be in the reasonableness of the attorney fee, not to whom he pays it.
We note that Mr. Galvin does not contest the fact that had his former wife retained a third party attorney, such an attorney would have been entitled to a fee under the property agreement. Nor does he contest the reasonableness of the amount claimed. We have reviewed the record de novo (as it is sufficiently complete in this regard as to obviate the need to remand for additional evidence on this issue) as to the amount and reasonableness of the attorney fees claimed by Ms. Ellington. She provided uncontested documentation that appears in the record showing 137 hours at a rate of $100.00 per hour, for a total of $18,700.00. We find this figure to be reasonable.
Accordingly, we find that where a statute or contract allows a party to collect reasonable attorney fees, an attorney representing himself/herself may in general be entitled to collect such fees unless the statute or contract clearly indicates otherwise. Based on this reasoning, we conclude that Sally Ellington is entitled to attorney fees in the sum of $18,700.00.
II. Shirley Gaden’s claim for contribution.
The second claim against Mr. Gal-vin is that of his former mother-in-law, Shirley Gaden, for his virile share of the debt she paid to satisfy a loan from the Whitney National Bank for which she contends they were both co-sureties.
| fiHowever, it is important to note at the outset that Shirley Gaden did not appear at the trial of this matter, nor did anyone else appear who was authorized to testify as to her affairs relating to this case. The loan (actually the aggregate of a series of loans) was made to E.G. Boh Forest Products, Inc., (hereinafter “Boh”) and the debt was in excess of $860,000.00. Mr. Galvin guaranteed this debt in a Continuing Guaranty dated October 10, 1988. When the corporation did not pay the debt, the Whitney called the loan. Shirley Gaden allegedly contributed $153,000.00 cash, $60,000.00 in bonds and a $35,000.00 promissory note as her portion of the debt owed to the Whitney, for a total of $248,000.00. Mr. Galvin paid $6,000.00 to the Whitney and $150.00 to Shirley Gaden. Ms. Gaden contends that there were six sureties on the Whitney loan, making Mr. Galvin’s vir *386 ile share $41,333.33, less the $6,150.00 he had paid as set forth above: $6,000.00 to the Whitney and $150.00 to Shirley Gaden. Thus, according to Shirley Gaden, Mr. Gal-vin still owed $35,183.00.
The trial court found that the Gadens were principal obligors[2] on the debt to the Whitney and that Mr. Galvin as a mere surety on the debt had no obligation to them for any payments they made on the debt. The trial court in its written reasons for judgment found that:
Shirley Gaden offered no evidence of her legal standing as it pertains to Galvin and the Whitney. Was she a principal obligor with her husband Howard in the family business, or, was she a surety, a guarantor — like Galvin, as she pleads in the petition? Shirley Gaden introduced no documents that would establish her status herein. This court has no way of knowing what her relationship was to the Whitney Bank and/or to Galvin. However, there is no evidence whatsoever in the record that would |7aIlow anyone to know what legal status Shirl[e]y Gaden possesses in this lawsuit.
The written reasons go on to find that: Further, Shirley Gaden offered no evidence that she actually paid any portion of the debt owed to the Whitney Bank, which is the subject of this lawsuit. In fact, the plaintiffs chief witness, Sally Ellington, testified that the sum of $153,000 was paid to the Whitney on this debt, but that this sum was paid by Shirley’s son-in-law, and the payment was made to allow her husband to keep their home. No other evidence was introduced which would establish that Shirley Gaden paid any amount to the Whitney, for whom Galvin was a guarantor. There was simply no evidence introduced that would allow anyone to calculate the amount of the ‘debt’ Shirley Gaden and her husband allegedly paid.
As noted earlier, Shirley Gaden’s pleadings and brief contend that when the Whitney bank called the Boh loan, she contributed $153,000.00 in cash, $60,000.00 in bonds, and a $35,000.00 promissory note, bringing the total contributed by her on the loan to $248,000.00. However, she did not testify and there are no documents in the record to support the claim that any such payments were made.
Her daughter, Sally, testified that her sister loaned her parents $153,000.00 to pay the Whitney, but she was never asked what knowledge she had concerning whether her mother, Shirley, actually made the payment.[3]
The only document bearing a signature purporting to be that of Shirley Gaden was the “Compromise, Settlement and Forbearance Agreement” (hereinafter referred to as the “Settlement Agreement”) with the Whitney Bank. She did not appear to attest to her signature, but we have no reason to doubt that it was, in fact, her signature. The Settlement Agreement refers to an indebtedness | sowed to the Whitney in the sum of $860,189.47 by E.G. Boh Forest Products, Inc., as evidenced by a list of nineteen promissory notes executed by E.G. Boh Forest Products, Inc. There is nothing in the Settlement Agreement that explains the relationship of the signatories thereto to the indebtedness other than Edward *387 Boh Gaden who signed as president of E.G. Boh Forest Products, Inc. The document does not explicitly state why the parties signing in their individual capacities were signing or why the amounts each party was called upon to pay was different. They could have been interested in the transaction as signatories to a Continuing Guaranty as were Sally Ellington and Paul Kevin Galvin or they could have had varying financial stakes in the business, or both — but we do not know for sure[4]. We particularly do not know, as was pointed out by the trial judge in his written reasons, what Shirley Gaden’s relationship to the debt was.
Sally Ellington acknowledged on the stand that while the Whitney prepared the Settlement Agreement, the non-Whitney signatories, which would have included Shirley Gaden, “had some input in the wording and the tenor of the agreement ...” She also acknowledged that there was no doubt “in anybody’s mind that those who signed on behalf of the debtors, the people that owed the Whitney, understood that once these obligation were met, their obligation to the Whitney would be through.” There was no reservation of rights as between any of the non-Whitney signatories. The amounts each non-Whitney party to the Settlement Agreement was obligated to pay were different, thus bolstering the conclusion that the Settlement Agreement reflected what the parties agreed among |flthemselves was to be the personal responsibility of each. Thus, the trial judge could reasonably infer that such amounts were based in whole or in part on each party’s interest in the business and, therefore, no further adjustments among the parties was called for.
Based on the record before us, we cannot say that the trial judge was manifestly erroneous in concluding as set forth in his reasons for judgment that the Settlement Agreement was intended to be fully dis-positive of not only any obligations owed to the Whitney by any and all of the non-Whitney signatories, but it was also intended to be fully dispositive as between and among themselves. Shirley Gaden had the burden of proving her case and the record does not permit us to find that the trial court was manifestly erroneous in concluding that she failed to do so.
DECREE
For the foregoing reasons, we amend the trial court judgment in part to vacate only that portion of the judgment denying Sally Ellington’s claim for attorney fees and hereby render judgment in her favor and against Paul Kevin Galvin in the sum of $13,700.00. In all other respects, the judgment of the trial court is affirmed, including those portions of the judgment dismissing the claims of Shirley Gaden and condemning Paul Galvin to pay to Sally Ellington “all reasonable costs incurred in the claim herein”; and remand to the trial court for a |inhearing as called for in the trial court reasons for judgment in order to determine what those costs might be.
All parties are to bear their own costs.
AMENDED.
AFFIRMED AS AMENDED, AND REMANDED.

. "Sally Ellington” is also the way her signature appears on all exhibits offered into evidence.

. Counsel for Mr. Galvin conceded in oral argument that Shirley Gaden was a surety for the debt of the family corporation.

. "So that my parents could keep the house, my sister and now ex-brother-in-law loaned my parents the money to extinguish the debt which was the appraised amount that the Whitney had appraised it for. So it’s what the Whitney had expected to get for this property-”

. The plaintiffs' brief refers to a copy of a Continuing Guaranty purportedly signed by Shirley and her husband, Howard Gaden, but it was never identified as such at the trial and was not offered into evidence at the trial. Therefore, it cannot be considered by this Court. There is no reference to it by the trial court, which is proper.