CHEHARDY, C.J.
This is an appeal from a judgment of the Juvenile Court, Parish of Jefferson, terminating a natural father's parental rights. For the following reasons, we affirm.
Facts and Procedural History
The record reflects that S.R.B.[1] became pregnant in 2015 while she and B.A.B., Sr. were cohabitating in an apartment that she leased. When B.A.B., Sr. purchased a house in August of 2015, the couple moved into the house together, where B.A.B., Sr. paid the household expenses, except for food. S.R.B. testified that, as an unemployed single mother, she was eligible for food stamps and "WIC," which she used to feed the household.
On October 16, 2015, B.A.B., Jr. (hereinafter "the child") was born out of wedlock to S.R.B. and B.A.B., Sr., who executed an acknowledgement of paternity and is named on the child's birth certificate. Although B.A.B., Sr. was gainfully employed[2] and covered by his employer's health insurance, the costs of the child's birth were paid by Medicaid.
After the child was born, S.R.B. and the child remained living in B.A.B., Sr.'s house for two months. However, after an argument in late December of 2015, S.R.B. took *561 the child to stay with friends until roughly March 2016. B.A.B., Sr. did not contribute money for the child's expenses, i.e., clothing, diapers, or formula, while the child was not in B.A.B., Sr.'s house.
In early March of 2016, S.R.B. and the child returned to B.A.B., Sr.'s house. At that time, the child was also added to B.A.B., Sr.'s health insurance, at no additional cost to B.A.B., Sr. During that time, S.R.B. continued to use her food stamps and W.I.C. vouchers to purchase groceries for the house. For several months, the couple maintained a relationship.
On July 4, 2016, however, after a party at their house, B.A.B., Sr., who admitted to consuming about 5 or 6 beers, struck S.R.B. in the face and "broke" her nose. After B.A.B., Sr.'s arrest in the early morning hours of July 5, 2016, S.R.B.'s cousin picked up S.R.B. and the child and brought them to her home. Within days, the child returned to stay with the same family friends that he had lived with earlier in the year.
Although S.R.B. returned to B.A.B., Sr.'s house in October of 2016, she did not bring the child. In fact, the child only returned to B.A.B., Sr.'s house to stay for one week in March of 2017. During that visit, B.A.B., Sr. had an episode of extreme alcohol intake and belligerence, which triggered S.R.B. to leave the house and remove the child. Further, that event caused S.R.B. to realize that she would not be able to raise the child alone and would not be able to count on B.A.B., Sr. as a parent so, on March 30, 2017, S.R.B. voluntarily surrendered her rights to the child to allow the child to be privately adopted by the family friends who had been keeping the child.
The record is clear that B.A.B., Sr. did not send a gift for the child's first birthday or Christmas of 2016. Further, B.A.B., Sr. did not present evidence that he had offered to contribute money for the child's expenses from July 2016 until March 2017.[3]
More importantly, B.A.B., Sr. admitted that he did not really know where the child was living from July 2016 until April of 2017, even while S.R.B. was living with B.A.B., Sr. at his house. He stated that he "trusted" the woman that he loved and thought that the child was living with S.R.B.'s cousin or friends. Except for a single text message, there is no evidence that he made any attempt to locate the child until April of 2017.
On or about April 12, 2017, however, B.A.B., Sr. learned that S.R.B. had surrendered her rights to the child and that another family sought to adopt the child.[4] On April 21, 2017, B.A.B., Sr. filed an opposition to the adoption pursuant to La. Ch.C. art. 1137, which triggered the opposition hearing. After a two-day hearing, the juvenile court found that B.A.B., Sr. failed to prove that he had made a substantial commitment to his parental responsibilities and that he is a fit parent. At that hearing, the court terminated B.A.B., Sr.'s parental rights and declared the child available for adoption. This appeal follows.
Law and Argument
In brief to this court, B.A.B., Sr. assigns three errors: first, the trial court erred in finding that the biological father failed to carry his burden of proof to establish by a *562 preponderance of evidence that he manifested a substantial commitment to his parental responsibilities and that he was a fit parent to the minor child; second, the trial court erred in finding that the biological father was not thwarted in his efforts to manifest a parental commitment by the biological mother and/or her agents; and third, the trial court erred in remaining in the courtroom when a proffer was made.
Standard of Review
It is well settled that an appellate court cannot set aside a juvenile court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. In re A.J.F. , 00-0948 (La. 6/30/00), 764 So.2d 47, 61 ; In re Adoption of A.P.C. , 00-1381 (La. App. 5 Cir. 12/13/00), 776 So.2d 567, 573, writ denied , 01-0319 (La. 2/14/01), 785 So.2d 835. "Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court."
In re A.J.F., supra ; Rosell v. ESCO , 549 So.2d 840 (La. 1989) ; Arceneaux v. Domingue , 365 So.2d 1330 (La. 1978). Where the fact finder is presented with two permissible views of the evidence, the fact finder's choice between them is not clearly wrong. Id. Substantial commitment and parental fitness are factual findings that are entitled to deference unless the trial court is clearly wrong. In re Adoption of J.L.G. , 01-0269 (La. App. 1 Cir. 2/21/01), 808 So.2d 491.
In manifest error review, it is important that the appellate court not substitute its opinion when it is the juvenile court who is in the unique position to see and hear the witnesses as they testify. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. In re A.J.F. , 764 So.2d at 62.
Substantive Law
In the first assignment of error, B.A.B., Sr. contends that the juvenile court committed manifest error and was clearly erroneous in terminating his parental rights and obligations under La. Ch.C. art. 1138. He asserts that he proved by a preponderance of the evidence his fitness as a parent, his substantial commitment to his parental responsibilities, and his willingness and ability to assume legal and physical care of the child. B.A.B., Sr. seeks reversal of the juvenile court's judgment.
La. Ch.C. art. 1138, which is part of the chapter on surrender of parental rights, provides for a hearing where adoption is opposed, as follows:
A. At the hearing of the opposition, the alleged or adjudicated father must establish his parental rights by acknowledging that he is the father of the child and by proving that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child.
B. Proof of the father's substantial commitment to his parental responsibilities requires a showing, in accordance with his means and knowledge of the mother's pregnancy or the child's birth, that he either:
(1) Provided financial support, including but not limited to the payment of consistent support to the mother during her pregnancy, contributions to the payment of the medical expenses of pregnancy and birth, or contributions of consistent support of the child after birth; that he frequently and consistently visited the child after birth; and that he is now *563 willing and able to assume legal and physical care of the child.
(2) Was willing to provide such support and to visit the child and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child.
C. The child and the legal custodian may offer rebuttal evidence limited to the issues enumerated in Paragraphs A and B of this Article.
D. If the court finds that the alleged or adjudicated father has failed to establish his parental rights, it shall decree that his rights are terminated.
* * *
The comments following La. Ch.C. art. 1138 read, in pertinent part, that the article is "consistent with requirements declared by the Supreme Court" and also that the criteria for assessing the father's rights are derived from In re Adoption of B.G.S ., 556 So.2d 545 (1990). La. Ch.C. art. 1138, Comments 1991, (a) and (b).
In this case, the juvenile court spoke at length about its reasons for judgment, making factual findings about the factors listed in La. Ch.C. art. 1138(A)-(B). Specifically, the juvenile court judge found that B.A.B., Sr. did not meet the burden of contributing to the expenses of pregnancy or birth; did not offer or provide any consistent contributions to the monetary support for the child; and that his "conduct certainly poses a risk of harm to the physical, mental, and emotional health of this child."
On appeal, B.A.B., Sr. argues that he demonstrated a substantial commitment to his parental responsibilities. According to the record, the juvenile court found that B.A.B., Sr. failed to pay the medical expenses of the birth and failed to provide consistent support after the birth of the child, especially when the child was not present in B.A.B., Sr.'s home.
B.A.B., Sr. asserts that S.R.B. lived with him during her pregnancy and for several months after the child was born; that he paid the rent and utilities that benefitted them; and that he gave S.R.B. money for additional items needed for the child and the household. However, he did not have receipts for items that he purchased for S.R.B. or the child. Although he claims that he "paid the bills," he did admit that he knew S.R.B. received public assistance for food and medical care so he did not consistently buy groceries. Finally, with regard to financial support, B.A.B., Sr. introduced evidence of three deposits he made to S.R.B., which were determined to be payments for S.R.B.'s car note and car insurance and other expenses not related to the child's care.
B.A.B., Sr. stated that he worked the evening shift from 3:00 p.m. to 3:00 a.m. but admitted that he could have changed his hours to spend more time with his family. When asked by his lawyer about his future plan for custody, he stated that, "I'd like some visitation."
More troubling, B.A.B., Sr. stated that he was unaware of the child's physical location from July 2016 until April 2017, even when S.R.B. returned to live with B.A.B., Sr. in Slidell. B.A.B., Sr. stated that he "trusted" S.R.B. and believed that her cousin or a family friend was caring for the child. Further, when the child visited, he was clean and well-fed, so B.A.B., Sr. thought he was adequately maintained and was not concerned with the child's actual whereabouts. After hearing this testimony, the trial judge found that B.A.B., *564 Sr. failed to demonstrate a substantial commitment to parental responsibility.
We point out that the juvenile court's findings on all these points turned on determinations of credibility of the witnesses, which we cannot overturn unless clearly wrong. Our review of the entire transcript reveals a reasonable factual basis for the determinations and shows no manifest error in the trial court's findings.
B.A.B., Sr. also contends that the trial judge erred in failing to find that he was a fit parent. La. Ch.C. art. 1103(5) defines "parental fitness" for purposes of surrender of parental rights as follows:
(a) That a parent has not abused the child. For purposes of this Subparagraph, abuse means the infliction of physical or mental injury which causes deterioration to the child, sexual abuse, exploitation, or overworking of a child to such an extent that his health or moral or emotional well-being is endangered.
(b) That a parent has consistently offered to provide reasonably necessary food, clothing, appropriate shelter, or treatment for the child. For purposes of this Subparagraph, treatment means medical care or other health services provided in accordance with the tenets of a well-recognized religious method of healing with a reasonable, proven record of success.
(c) That a parent suffers from no medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance abuse, or chemical dependency which makes him unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.
(d) Viewed in its entirety, the parent's past or present conduct, including his criminal convictions, would not pose a risk of substantial harm to the physical, mental, or emotional health of the child.
B.A.B., Sr. points out there have been no allegations of child abuse against him. He conceded however that the charge against him for domestic abuse battery of S.R.B. is pending in St. Tammany Parish.
B.A.B., Sr. admits that he consumes alcohol, but asserts that he only drinks on weekends and does not drink and drive. He admitted that he used to smoke marijuana but denies other drug use.
Although B.A.B., Sr. testified that he cared for the child by feeding, bathing, and diapering the child after work and on his days off, S.R.B. testified that she was afraid to leave the child alone for a few minutes with B.A.B., Sr. as he was not attentive to the baby. B.A.B., Sr. admitted that he felt that he earned the money so that S.R.B. could stay home to care for the child.
Finally, B.A.B., Sr. admitted that he still owned his beloved pit bull terrier, who lives in a locked room in his backyard and is not safe to have around children. Based on this testimony, the trial judge found that B.A.B., Sr.'s conduct posed a risk of substantial harm to the physical, mental, or emotional health of the child.
Again, we note that the juvenile court's findings on all these points turned on determinations of credibility of the witnesses, which we cannot overturn unless clearly wrong. Our review of the entire transcript reveals a reasonable factual basis for the determinations and shows no manifest error in the trial court's findings. Thus, we find no merit in this assignment of error.
In his second assignment of error, B.A.B., Sr. argues that the trial court erred in finding that the biological father was not thwarted in his efforts to manifest *565 a parental commitment by the biological mother and/or her agents. B.A.B., Sr. specifically argues that S.R.B. and/or her agents thwarted his efforts to manifest a parental commitment to the child by keeping the child away from him.
At trial, however, S.R.B. testified that she removed the child from B.A.B., Sr.'s home for the child's protection from B.A.B., Sr.'s drinking, from other inhabitants of B.A.B., Sr.'s home, and from B.A.B., Sr.'s pit bull. In this case, S.R.B. gave B.A.B., Sr. an opportunity to accept his parental responsibility by living with him for several months after the child's birth and bringing the child for visits. However, B.A.B., Sr. continued his chaotic lifestyle by abusing alcohol and engaging in violence, so the trial judge found that S.R.B. had not thwarted B.A.B., Sr. but had acted to promote the child's safety. Upon review, we find no error in that ruling. Cf. In re A.J.F. , supra at 52.
In his third assignment of error, B.A.B., Sr. argues that the trial court erred in remaining in the courtroom when a proffer was made.
La. C.E. art. 103(A)(2) provides that: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [w]hen the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel." Further, La. C.E. art. 103(C) provides that, "In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or asking questions in the hearing of the jury."
Regarding proffers in civil[5] matters, La. C.C.P. art. 1636 reads:
A. When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence.
B. At the request of any party, the court may allow any excluded evidence to be offered, subject to cross-examination: on the record during a recess or such other time as the court shall designate; or by deposition taken before a person authorized by Article l434 within thirty days subsequent to the exclusion of any such evidence or the completion of the trial or hearing, whichever is later. When the record is completed during a recess or other designated time, or by deposition, there will be no necessity for the requesting party to make a statement setting forth the nature of the evidence.
C. In all cases, the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality.
D. If the court permits a party to make a complete record of the evidence held inadmissible, it shall allow any other party the opportunity to make a record in the same manner of any evidence bearing upon the evidence held to be inadmissible.
Here, we point out that the trial judge was the trier of fact and not a jury. La. C.E. art. 103(C) has no specific prohibition against the trial judge's presence during a proffer but rather seeks "to prevent *566 inadmissible evidence from being suggested to the jury." Further, La. C.C.P. art. 1636 requires the trial judge to
"permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence," which the trial judge did on several occasions for all parties during this trial. Here, although it may not be the customary practice, we find no error in the trial court's presence during the proffers. This assignment of error lacks merit.
Answer to Appeal
In addition, J.L.C.K. and J.D.K., Jr., the prospective adoptive parents and appellees herein, filed an answer to the appeal seeking damages for a frivolous appeal as well as costs and attorney fees, pursuant to La. C.C.P. art. 2164.
"The court may award damages for frivolous appeal in civil cases as provided by law." U.R.C.A. Rule 2-19. La. C.C.P. art. 2164 authorizes an appellate court to award damages for a frivolous appeal. However, the supreme court has explained that damages are not allowed unless the appeal is "unquestionably frivolous[.]" Hampton v. Greenfield , 618 So.2d 859, 862 (La. 1993).
"Damages for frivolous appeal are only allowed when 'it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious.' " Id. Further, this provision is penal in nature and is to be strictly construed. Treme v. Adams , 10-554 (La. App. 5 Cir. 1/11/11), 59 So.3d 1278, 1282.
In this case, while unsuccessful, we do not find that B.A.B., Sr.'s appeal rises to the level of "unquestionably frivolous." Accordingly, we decline to award damages.
Decree
For the foregoing reasons, we affirm the trial court judgment terminating B.A.B., Sr.'s parental rights. All costs of this appeal are assessed against the appellant, B.A.B., Sr.
AFFIRMED.

The initials of the parties will be used to protect and maintain the privacy of the minor child involved in this proceeding. In re J.A. , 99-2905 (La. 1/12/00), 752 So.2d 806, 807 n.1.

B.A.B., Sr. testified that, as an Engineer for the New Orleans Public Belt Railroad, he earned $107,000.00 in 2016.

On July 19, 2016, B.A.B., Sr. deposited $380.00 into S.R.B.'s bank account, which S.R.B. testified was to pay her "car note." On August 2, 2016, B.A.B., Sr. deposited $320.00 into S.R.B.'s bank account, which S.R.B. testified was to pay her car insurance. However, there was no evidence that this money was for the child's expenses.

Since July of 2016, the child has been living with the prospective adoptive family.

La. Ch.C. art. 105 reads, in pertinent part, "Except as otherwise specially provided by this Code, the rules of evidence applicable to juvenile adjudication hearings in non-delinquency proceedings are those provisions of the Louisiana Code of Evidence applicable to civil cases."