CHEHARDY, C.J.
*500 On appeal, Soniya Dumas Robert, individually and in her capacity as the administratrix of the Succession of Joseph Farley Dumas, Sr., challenges the trial court's ruling in favor of New Era Development Corporation and Tuan and Tina Dinh, dismissing her claims of fraud and damages. For the following reasons, we affirm.
Factual and Procedural History
This is the third appeal in this case, which has a long procedural history.[1] The undisputed facts are that Joseph Farley Dumas, Sr. died intestate on October 27, 2007, leaving two children: Joseph Farley Dumas, Jr. ("Junior Dumas") and Soniya Dumas Robert ("Ms. Robert"). At the time of his death, Mr. Dumas, Sr. owned a piece of immovable property in Jefferson Parish.[2]
On May 16, 2008, prior to the opening of his father's succession and while fraudulently[3] representing himself to be Joseph Dumas, Sr., Junior Dumas executed a cash sale of this property to Tina and Tuan Dinh ("the Dinhs")[4] at the office of Southern Title, Inc.[5] Shortly thereafter, the Dinhs learned that Junior Dumas had fraudulently represented himself to be Joseph Dumas, Sr. and alerted Southern Title.
On July 18, 2008, at the offices of Southern Title,[6] Tina and Tuan Dinh executed a Quitclaim Deed in favor of New Era Development Corporation ("New Era") in exchange for $38,881.50. On July 23, 2008, *501 Ms. Robert opened her father's succession proceedings and was appointed administratrix.
On January 3, 2009, New Era filed a petition for partition by licitation seeking a judicial sale of the Martin Street property, claiming that it had a one-half interest in that property. In response, Ms. Robert, in her capacity as administratrix of the succession, filed exceptions and a general answer to the allegations as well as a reconventional and third party demand against New Era, Southern Title, Joseph Farley Dumas, Jr., and Tina and Tuan Dinh. In its reconventional and third party demand, the succession sought to have both the sale of the property from Junior Dumas to the Dinhs and the Quitclaim Deed executed by the Dinhs to New Era declared absolute nullities and ownership of the property returned to the succession. Further, the succession administratrix sought attorney fees and damages based on the third-party defendants' acts of bad faith and negligence.
In September of 2011, the succession moved for summary judgment, on the basis that both the May 16, 2008 sale of property and the July 18, 2008 Quitclaim Deed were absolute nullities. After a hearing, the trial judge granted summary judgment in favor of the succession, and dismissed New Era's petition for partition with prejudice. When New Era appealed that judgment, this Court affirmed the trial court's grant of summary judgment that both 2008 transactions of the Martin Drive property were absolute nullities. See New Era Dev. Corp. v. Robert , 12-304 (La. App. 5 Cir. 11/13/12), 105 So.3d 889. That judgment is now final.
Thereafter, on June 3, 2013, Ms. Robert moved to set the succession's reconventional and third-party demands for trial. In response, New Era filed a first supplemental and amended petition naming Junior Dumas as a defendant seeking damages and "return of sums not due." On March 21, 2014, Ms. Robert filed her "first supplemental and amended answer, reconventional demand, and third party demand" seeking damages for the actions of New Era and Southern Title through their agent, David J. Bourgeois, alleging that they intentionally conspired to fraudulently convert one-half of the succession's interest in the Martin Drive property. On August 7, 2014, Ms. Robert dismissed her claims against Southern Title. Shortly thereafter, Southern Title dismissed its pending appeal of a judgment in favor of Ms. Robert and the succession.[7]
On November 25, 2014, Ms. Robert again moved to set the succession's remaining claims against New Era, the Dinhs, and Junior Dumas for trial. In response, New Era filed an exception of no right of action on the basis that Ms. Robert did not have standing as a succession representative to assert a claim for intentional infliction of emotional distress. The trial court granted New Era's exception and allowed Ms. Robert time within which to amend her petition. Meanwhile, on December 12, 2014, Ms. Robert moved for and was granted a preliminary default against Junior Dumas.[8]
*502 On March 24, 2015, Ms. Robert, in her individual capacity, filed a "second supplemental and amended answer, reconventional demand, and third party demand" naming New Era as defendant. In her demand, Ms. Robert sought damages for the emotional distress she suffered from New Era's conspiracy to convert succession property, as well as attorney fees and costs.
On June 20, 2017, New Era obtained a preliminary default judgment against defendant, Junior Dumas. The default judgment, in the sum of $37,572.00, plus interest and costs, was later confirmed.[9]
Meanwhile, on September 5, 2017, Ms. Robert's reconventional demands against New Era and the Dinhs went to trial before the bench. Specifically, Ms. Robert, individually and as the succession administratrix, claimed that New Era is liable to her and the succession for filing a partition claim seeking ownership of Junior Dumas's interest in the succession property; for acquiring a quitclaim from the Dinhs as to their rights in the property; and for failing to disclose the civil suit filed by Southern Title against Junior Dumas to recover the funds paid while at the same time maintaining the partition suit.
After hearing testimony, the trial judge held the trial over to allow time for the parties to depose Derryl Bourgeois of Southern Title and to file post-trial memoranda. On November 17, 2017, the trial judge entered judgment in favor of New Era and the Dinhs and against Ms. Robert, individually and as administratrix of the succession, and dismissed Ms. Robert's reconventional demands and third party demands. In his reasons for judgment, the trial judge found that Ms. Robert failed to prove fraud on the part of New Era when it obtained a quitclaim deed from the Dinhs then attempted to partition the property. Further, the trial court found that Ms. Robert failed to establish a conspiracy between New Era and Southern Title to convert her interest in the property in question. Finally, the trial judge found that Ms. Robert failed to prove any damages, including lost rental or sale of the property or emotional distress to herself.
On November 27, 2017, Ms. Robert filed a motion for new trial, individually and on behalf of the succession, contending that the default judgment obtained by New Era against Junior Dumas is clearly against the law and the evidence as New Era only contracted with the Dinhs, not with Junior Dumas. On January 10, 2018, the trial judge granted Ms. Robert's motion for new trial with respect only to the confirmation of the preliminary default against Junior Dumas by New Era and vacated that default judgment for lack of privity. This appeal follows.
Law and Argument
On appeal, Ms. Robert contends that the trial judge erred in failing to find that New Era committed fraud in this case. In its answer to the appeal, New Era contends that the trial judge erred in vacating its final, default judgment against Junior Dumas and prayed for damages for a frivolous appeal and attorney fees for the appeal.
Jurisdictional Notes
Initially, New Era points out that Ms. Robert moved to appeal individually, not on behalf of the succession. Our review of the motion for appeal and several other motions filed in conjunction with that motion *503 supports appellee's assertion that Ms. Robert filed an appeal individually, not on behalf of the succession. For that reason, we will address the issues raised on appeal by Ms. Robert in her individual capacity, which is that the trial court failed to find that New Era committed fraud and New Era's actions caused her emotional distress that resulted in damages to her.
Ms. Robert specifically contends that the trial judge erred in failing to find that New Era and Southern Title committed fraud. Ms. Robert asserts that New Era misrepresented the truth of the situation. First, Ms. Robert argues that, as a separate entity, New Era had no interest in making the Dinhs whole when it executed the Quitclaim Deed on the property with the Dinhs for $38,000.00. When the Quitclaim Deed was executed, Southern Title and the Dinhs were fully aware that Junior Dumas had only a one-half ownership interest in the property. Ms. Robert also points out that, in a petition filed in a separate civil action arising out of this action, Southern Title admitted that it (not New Era) "refunded the Dinhs their $38,000.00." Ms. Robert contends that the connection between New Era and Southern Title, which are owned by brothers and operate out of the same business address, and the obvious misrepresentations by both Southern Title and New Era create the nexus of the fraud allegation.
The Louisiana Civil Code defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. C.C. art. 1953. Fraud must be pled with particularity. La. C.C.P. art. 856. Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957. A trial court's determination of whether fraud occurred is a question of fact and is subject to the manifest error standard of review on appeal. Succession of Schexnayder v. Schexnayder , 17-435 (La. App. 5 Cir. 5/30/18), 249 So.3d 995, 999.
The term "damages" refers to pecuniary compensation, recompense, or satisfaction for an injury sustained. General damages are those that may not be measured with any degree of pecuniary exactitude, are inherently speculative in nature, and cannot be fixed with mathematical certainty. See McGee v. A C and S, Inc ., 05-1036 (La. 7/10/06), 933 So.2d 770, 774. The term "general damages" includes those for mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money. In re Medical Review Panel on Behalf of Laurent , 94-1661 (La. App. 1 Cir. 6/23/95), 657 So.2d 713, 722.
Generally, in the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the trier-of-fact. See La. C.C. art. 2324.1. Non-pecuniary damages for fraudulent acts can include recovery for mental anguish, aggravation, and inconvenience that the wrongful actions caused. See Meador v. Toyota of Jefferson, Inc ., 332 So.2d 433, 438 (La. 1976).
At trial, the judge heard testimony from Ms. Robert; David Bourgeois of New Era; and George Rennicker, counsel for Southern Title. Further, the parties introduced the deposition of Derryl Bourgeois of Southern Title. Here, although the testimony indicates that Ms. Robert felt cheated and betrayed, there was no testimony that the Bourgeois brothers acted in concert to defraud Ms. Robert of her ownership interest in the property at issue. Further, there was no testimony that Ms. *504 Robert was unable to use and enjoy the property during the pendency of the suit. Furthermore, there was no evidence introduced to support Ms. Robert's claim for mental anguish, aggravation, and/or inconvenience. After hearing the testimony, the trial judge found that Ms. Robert had failed to establish fraud or conspiracy to commit fraud. Further, the trial judge found that Ms. Robert had failed to prove emotional damages in this case.
Under the manifest error standard, the reviewing court does not determine whether the trier of fact was right or wrong, but whether its conclusion was a reasonable one. Stobart v. State, through Dept. of Transp. and Dev ., 617 So.2d 880 (La. 1993). Findings based on credibility determinations are entitled to great deference. Foley v. Entergy Louisiana, Inc ., 06-0983 (La. 11/29/06), 946 So.2d 144. Where conflict exists in the testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed on review. Stobart, supra ; Rosell v. ESCO , 549 So.2d 840 (La. 1989). If the trial court's findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
Our review of the appellate record reveals no manifest error in the trial court's findings. Accordingly, we find that this assignment of error lacks merit.
Answer to Appeal
In its answer to the appeal, New Era specifically questions Ms. Robert's standing to move for a new trial of its default judgment against her brother. New Era contends that its judgment against Junior Dumas, which was confirmed on September 12, 2017, was final well before Ms. Robert filed her motion for new trial on November 27, 2017. Upon review of this factual scenario, we do not need to reach the issue of standing or timeliness.
"When a judgment is absolutely null based on a jurisdictional ground, it has no legal existence, and its nullity may be shown in collateral proceedings at any time and before any court." Champagne & Rodgers Realty Co. v. Guillot , 06-237 (La. App. 5 Cir. 11/14/06), 947 So.2d 39, 45.
Here, there was no contract between New Era and Junior Dumas. Southern Title, which closed the fraudulent sale by Junior Dumas that was later found to be a nullity, might have had an actionable claim against Junior Dumas. However, New Era has taken great pains to distinguish itself as a separate legal entity from Southern Title. Because New Era was not a party to the original sale, it has no claim against Junior Dumas.[10] Thus, New Era's default judgment against Junior Dumas was an absolute nullity under La. C.C.P. art. 2002(A)(2). Accordingly, on our own motion, we find that New Era's default judgment against Junior Dumas is an absolute nullity and vacate that default judgment as a nullity.
In addition, New Era, in its answer, sought damages for a frivolous appeal as well as costs and attorney fees, pursuant to La. C.C.P. art. 2164. "The court may award damages for frivolous appeal in civil cases as provided by law." U.R.C.A. Rule 2-19. La. C.C.P. art. 2164 authorizes an appellate court to award damages for a frivolous appeal. However, the supreme court has explained that damages are not allowed unless the appeal is *505 "unquestionably frivolous[.]" Hampton v. Greenfield , 618 So.2d 859, 862 (La. 1993).
"Damages for frivolous appeal are only allowed when 'it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious.' " Id. Further, this provision is penal in nature and is to be strictly construed. Treme v. Adams , 10-554 (La. App. 5 Cir. 1/11/11), 59 So.3d 1278, 1282.
In this case, while unsuccessful, we do not find that Ms. Robert's appeal rises to the level of "unquestionably frivolous." Accordingly, we decline to award damages. See In re J. L. C. K. , 17-496 (La. App. 5 Cir. 1/16/18), 238 So.3d 559, 566.
Decree
For the foregoing reasons, we affirm the trial court's holding in favor of New Era and against Ms. Robert. Further, we vacate New Era's default judgment against Junior Dumas as a nullity. Costs of this appeal are assessed entirely against New Era.
AFFIRMED; DEFAULT JUDGMENT VACATED .

New Era Dev. Corp. v. Robert , 12-304 (La. App. 5 Cir. 11/13/12), 105 So.3d 889 ; New Era Dev. Corp. v. Robert , 14-526, was dismissed on August 20, 2014 on the appellant's motion.

The property, which has a municipal location of 1101 Martin Drive in Marrero is legally described as:
THAT CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana, being a resubdivision of a plan of Lots 11 and 12 Ames Farms, Section "B," and designated as KINGS MANOR SUBDIVISION, Ordinance # 8910 by the Jefferson Parish Council, dated August 22, 1968, and according to the survey of J. J. Krebs & Sons, Inc., dated July 22, 1068, [sic ] said lot is designated as follows, to-wit: Lot 1, Square 1

On April 28, 2010, Junior Dumas pled guilty to one count of forgery, in violation of La. R.S. 14:72, in Twenty-Fourth Judicial District Court case number 09-3967. That day, the trial judge sentenced him to three years imprisonment, which Junior Dumas served.

A copy of the Cash Sale at issue in this case was attached to the original petition brought by New Era. The document, dated May 16, 2008, indicated a transfer of Lot 1, SQ1, Kings Manor S/D, 1101 Martin Drive, Marrero, LA 70072 by Joseph Farley Dumas, Sr. to Tina Dinh and Tuan Dinh for the contract price of $38,000.00. The signature of the seller that appears on the document is "Joseph Farley Dumas, Sr." and the signature of the buyer is Tuan Dinh. The document was witnessed and notarized by George S. Ruppenicker of Southern Title, Inc.

Initially, David Bourgeois testified that he is an abstracter for Southern Title and his brother, Derryl Bourgeois, was the sole owner of Southern Title. However, when confronted with disclosure of ownership documents from the Louisiana Secretary of State, David Bourgeois admitted that he has an ownership interest in Southern Title. David Bourgeois further admitted that he is the sole owner of New Era Development Company, a business that owns between 25 to 30 properties in Orleans Parish and Jefferson Parish.

On August 1, 2008, Southern Title filed suit for damages against Junior Dumas and the supermarket where he cashed the $38,000 check. Southern Title, Inc. v. Joseph Farley Dumas Jr., et al , Twenty-Fourth Judicial District Court case number 662-772. That suit was not pursued and is now abandoned.

As noted in fn. 1, infra , New Era Dev. Corp. v. Robert , 14-526 was dismissed on the appellant's motion.

Ms. Robert as succession administratrix was again granted a preliminary default against her brother, Junior Dumas, on November 16, 2016. During trial on September 5, 2017, upon Ms. Robert's motion, the trial judge confirmed the default judgment for $37,000.00 against Mr. Dumas. Subsequently, on February 15, 2018, Ms. Robert, on behalf of the succession, obtained a default judgment against Junior Dumas for $56,487.85, plus interest and costs.

New Era's default judgment was confirmed during trial on September 5, 2017 and in writing on September 11, 2017. As noted above, Ms. Robert's default judgment was confirmed during trial on September 5, 2017.

If New Era had admitted to a legal relationship with Southern Title, it may have had a claim against Junior Dumas. However, that relationship could also open both entities up to allegations of collusion and/or fraud.